Jacob M. Polakoff, Bar No. 035832006
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Email: jpolakoff@bm.net
Tel.: (215) 875-3000
Fax: (215) 875-4604

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON DIVISION**

| | |
|---|---|
| Andrew Ritz and Michael Ritz, | Case No. 3:20-cv-13509 |
| Plaintiffs, | |
| v. | |
| Nissan-Infiniti LT; Trans Union, LLC; Equifax Information Services, LLC; and Experian Information Solutions, Inc., | |
| Defendants. | |

**COMPLAINT AND JURY DEMAND**

Plaintiffs Andrew Ritz and Michael Ritz bring this Complaint and Jury Demand against Defendants Nissan-Infiniti LT; Trans Union, LLC; Equifax Information Services, LLC; and Experian Information Solutions, Inc., and state the following allegations and claims for relief:

## PARTIES

1. Plaintiff Andrew Ritz ("**Andrew**"), resides in Freehold, New Jersey, which is within the district and division of this Court. Plaintiff is a consumer as defined by Section 1681a(c) of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "**FCRA**").[1]

2. Plaintiff Michael Ritz ("**Michael**"), resides in Freehold, New Jersey, which is within the district and division of this Court. Plaintiff is a consumer as defined by Section 1681a(c) of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "**FCRA**").

3. Nissan-Infiniti LT ("**NILT**"), the assignee of a certain "Motor Vehicle Lease Agreement" between DCH Freehold Nissan (the "**Dealer**"), is a "furnisher" of credit information as that term is defined by the FCRA.

4. Trans Union, LLC ("**Trans Union**") is a consumer reporting agency as that term is defined by the FCRA.

5. Equifax Information Services, LLC ("**Equifax**") is a consumer reporting agency as that term is defined by the FCRA.

6. Experian Information Solutions, Inc. ("**Experian**") is a consumer reporting agency as that term is defined by the FCRA.

## JURISDICTION

---

[1] Unless otherwise specified all "**Section**" references are to the FCRA.

7. This lawsuit is brought pursuant to the FCRA and presents a federal question. Therefore, jurisdiction arises under 28 U.S.C § 1331 and 15 U.S.C § 1681, *et seq.*

8. Venue is proper within this district and division pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

### Processing of Credit Information

9. The national consumer reporting agencies (Trans Union, Equifax and Experian) (collectively, the "CRAs") regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others. These sources are known as "**furnishers**" within the credit reporting industry and under the FCRA.

10. Select Portfolio is a furnisher of credit information about Plaintiff to each of the CRAs.

11. The process by which CRAs receive, sort, and store information is largely electronic.

12. Furnishers report credit information to the CRAs electronically on a periodic basis using an electronic format known as Metro 2.

13. The CRAs take the credit information reported by these furnishers and create or associate consumer credit files.

14. Credit files are updated electronically by furnishers to reflect new information regarding the reported accounts (often referred to as "**tradelines**" within the industry).

15. When a furnisher wants to make a change to its reporting between reporting periods, a furnisher makes that change electronically using an electronic document known as an AUD or UDF (in some cases).

## Reinvestigation Procedures

16. When the CRAs receive a dispute from a consumer, the agencies investigate the dispute using an automated browser-based system called the Online Solution for Complete and Accurate Reporting ("**e-OSCAR**"). This system was designed to provide furnishers with an online solution for processing consumer disputes.

17. Through e-OSCAR, the CRAs send to the furnisher an Automated Credit Dispute Verification ("**ACDV**") that is supposed to include: the information the agency is currently reporting about the consumer and the credit information being disputed along with all relevant information about the consumer's dispute, which the agency received from the consumer.

18. Through this ACDV, the agency asks the furnisher to investigate the information in question and determine whether the information that it is reporting to the agency is correct, complete, and verifiable.

19. Through the ACDV, the furnisher is asked to verify that the indicative information (i.e. information such as name, current address, prior address, social security number, date of birth and phone number) the CRA has on the consumer matches the indicative information maintained in the furnisher's records; to verify that it is associated with the particular account being disputed; and to verify the accuracy of the tradeline information.

20. The furnisher is then supposed to return the ACDV to the CRA with the updated information (if any) relating to the consumer's credit history. In responding to an ACDV, a furnisher informs the agency that: (a) either the disputed information is "Verified"; (b) that the disputed information should be "Changed"; (c) or that the disputed item of information should be "Deleted". To do this the furnisher is asked to do nothing more than check a box.

21. If a furnisher chooses to verify the information, it will check a box called "Verified As Reported." Once checked, this will instruct the consumer reporting agency that all information about the disputed item of information is, in fact, accurate and that no changes should be made.

22. If a furnisher chooses to change information, it will check a box called "Change Data As Shown" and then will input changes into the various fields of information that need to be changed.

23. Whenever a furnisher directs an agency to change information on a consumer's credit file, that furnisher affirms to the CRA that it has made the same changes in its own systems. This affirmation is made by the furnisher on the form used to process the dispute.

### The Auto Loan Account

24. NILT furnishes consumer account information to the CRAs.

25. At all times relevant, NILT furnished a certain joint installment loan for an auto lease between NILT and Plaintiff (the "**the account**") associated with the personal identifying information (i.e. information such as name, current address, prior address, social security number, date of birth and phone number) (the "**indicative information**") of Plaintiff.

26. At all times relevant, NILT furnished the account to the CRAs with a negative payment history profile, account status, and payment rating.

27. Plaintiffs have never paid the account late. Accordingly, any derogatory payment history, status or rating furnished by NILT regarding the account was/is inaccurate.

### Plaintiffs' Disputes

28. NILT furnished and continues to furnish the account inaccurately to the CRAs.

29. Plaintiffs have disputed the accuracy of the NILT account with each of the CRAs on numerous occasions.

30. Each of the CRAs received Plaintiffs' disputes and forwarded those disputes to NILT.

31. During this time, Plaintiffs' credit scores suffered greatly.

32. Plaintiffs have suffered adverse action (including, credit denial, delay in obtaining credit, and/or other such action) due to the inaccurately reported NILT account, based on consumer reports issued by Experian and Trans Union.

33. These adverse actions and others caused Plaintiffs considerable emotional distress, including frustration, embarrassment, and humiliation.

34. Upon information and belief, the consumer reporting agencies processed Plaintiffs' disputes by sending ACDVs to NILT.

35. Upon information and belief, NILT responded to those ACDVs by improperly verifying the inaccurately reported account information.

36. Other than sending ACDVs to NILT, the CRAs did nothing to investigate the accuracy of the account.

37. Plaintiffs spent many hours of time disputing the inaccurate reporting with NILT and the CRAs.

38. Plaintiffs worked very hard and deliberately for years to maintain their excellent credit history.

39. The failures of the CRAs and NILT to correct this inaccurate reporting has caused Plaintiffs a great amount of anxiety and has impaired their ability to obtain credit or to obtain credit on favorable terms.

## CLAIMS FOR RELIEF

### FCRA Violations by Nissan-Infiniti-LT

40. This is a claim for violations of the federal Fair Credit Reporting Act.

41. NILT furnished credit information about Plaintiffs to the CRAs.

42. NILT is subject to the requirements of the FCRA, including those duties set out in 15 U.S.C. § 1681s-2(b).

43. At all relevant times, NILT provided inaccurate, misleading, and/or incomplete credit information to the CRAs about Plaintiffs. This inaccurate, misleading, and/or incomplete credit information was reported by the CRAs to Plaintiffs' potential lenders and others in a position of evaluating Plaintiffs' creditworthiness, credit standing, credit capacity, character, and general reputation.

44. Plaintiffs have notified the CRAs of their disputes of the information being reported by NILT. Upon information and belief, the CRAs forwarded to NILT a form of Plaintiffs' disputes and requests for reinvestigation.

45. Information was available to NILT that should have, upon a reasonable investigation, informed NILT that its reporting of the account was inaccurate, misleading, and/or incomplete.

46. NILT knew, should have known, or acted recklessly in not knowing that it was reporting Plaintiffs' account inaccurately.

47. There is no reasonable interpretation of credit reporting law that could justify NILT's reporting of the account.

48. Despite its knowledge that the information being reported to Plaintiffs' credit files was inaccurate, misleading, and/or incomplete, NILT repeatedly reported the information and repeatedly verified the information as accurate, knowing that by doing so Plaintiffs' creditworthiness would be damaged.

49. NILT has taken actions which violate the FCRA, specifically 15 U.S.C. § 1681s-2(b). These actions include, but are not limited to, the following: (a) reporting inaccurate, misleading, and/or incomplete information to the CRAs regarding the mortgage account; (b) failing to fully, properly, or reasonably investigate Plaintiffs' requests for reinvestigation; (c) failing to review all relevant information regarding Plaintiffs' requests for reinvestigation and/or disregarding that information after review; (d) after receiving notice of Plaintiffs' requests for reinvestigation, continuing to submit inaccurate, misleading, and/or incomplete information to the CRAs regarding the mortgage account; (e) failing to modify, delete, or permanently block the reporting of credit information regarding Plaintiffs, which Select Portfolio knows to be inaccurate, misleading, and/or incomplete; and

(f) failing to accurately respond to Plaintiffs' requests for reinvestigation made through the CRAs after receipt of their disputes.

50. NILT knows that the information it provided to the CRAs was false, inaccurate, misleading, and/or incomplete.

51. As a proximate result of this conduct, Plaintiffs suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit, damage to credit reputation, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

52. The acts and/or omissions of NILT made in violation of the FCRA were willful, entitling Plaintiffs to recover the remedies provided in 15 U.S.C. § 1681n.

53. The acts and/or omissions of NILT made in violation of the FCRA were negligently made, entitling Plaintiffs to recover the remedies provided in 15 U.S.C. § 1681o.

## FCRA Violations by Trans Union

54. Plaintiffs disputed the NILT tradeline with Trans Union and requested that Trans Union conduct a reinvestigation pursuant to Section 1681i.

55. Plaintiffs' requests for reinvestigation included sufficient information for Trans Union to provide actual notice that the information in dispute was inaccurate and that the sources of the disputed information were not reliable.

56. But Trans Union did not conduct any reinvestigations.

57. Instead, in response to Plaintiffs' disputes, Trans Union simply parroted the inaccurate reporting it received from NILT and conducted no investigation of its own.

58. In response to Plaintiffs' disputes, Trans Union performed no investigation at all and did not even initiate its normal reinvestigation processing procedures.

59. If Trans Union did conduct the reinvestigations requested by Plaintiffs, Trans Union failed to perform reasonable investigations.

60. Trans Union knows that the FCRA does not permit it to simply parrot the information it receives from furnishers; yet this is exactly what Trans Union does both when it initially reports information and when it *investigates* consumer disputes.

61. Even prior to Plaintiffs' requests for reinvestigation, Trans Union maintained sufficient information about the NILT account for Trans Union to conclude that the account was being inaccurately reported and/or that NILT's reporting of the account was not reliable.

62. Trans Union failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' consumer reports in violation of Section 1681e(b).

63. As a proximate result of this conduct, Plaintiffs suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and

benefit from credit, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

64. Trans Union negligently violated Section 1681e; alternatively, Trans Union willfully violated Section 1681e.

65. Trans Union negligently violated Section 1681i; alternatively Trans Union willfully violated Section 1681i.

66. Plaintiffs suffered damages as a result of these violations for which Plaintiffs are entitled to recover under Section 1681o or, alternatively, Section 1681n.

### FCRA Violations by Equifax

67. Plaintiffs disputed the NILT tradeline with Equifax and requested that Equifax conduct a reinvestigation pursuant to Section 1681i.

68. Plaintiffs' requests for reinvestigation included sufficient information for Equifax to provide actual notice that the information in dispute was inaccurate and that the sources of the disputed information were not reliable.

69. But Equifax did not conduct any reinvestigations.

70. Instead, in response to Plaintiffs' disputes, Equifax simply parroted the inaccurate reporting it received from NILT and conducted no investigation of its own.

71. In response to Plaintiffs' disputes, Equifax performed no investigation at all and did not even initiate its normal reinvestigation processing procedures.

72. If Equifax did conduct the reinvestigations requested by Plaintiffs, Equifax failed to perform reasonable investigations.

73. Equifax knows that the FCRA does not permit it to simply parrot the information it receives from furnishers; yet this is exactly what Equifax does both when it initially reports information and when it *investigates* consumer disputes.

74. Even prior to Plaintiffs' requests for reinvestigation, Equifax maintained sufficient information about the NILT account for Equifax to conclude that the account was being inaccurately reported and/or that NILT's reporting of the account was not reliable.

75. Equifax failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' consumer reports in violation of Section 1681e(b).

76. As a proximate result of this conduct, Plaintiffs suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

77. Equifax negligently violated Section 1681e; alternatively, Equifax willfully violated Section 1681e.

78. Equifax negligently violated Section 1681i; alternatively, Equifax willfully violated Section 1681i.

79. Plaintiffs suffered damages as a result of these violations for which Plaintiffs are entitled to recover under Section 1681o or, alternatively, Section 1681n.

## FCRA Violations by Experian

80. Plaintiffs disputed the NILT tradeline with Experian and requested that Experian conduct a reinvestigation pursuant to Section 1681i.

81. Plaintiffs' requests for reinvestigation included sufficient information for Experian to provide actual notice that the information in dispute was inaccurate and that the sources of the disputed information were not reliable.

82. But Experian did not conduct any reinvestigations.

83. Instead, in response to Plaintiffs' disputes, Experian simply parroted the inaccurate reporting it received from NILT and conducted no investigation of its own.

84. In response to Plaintiffs' disputes, Experian performed no investigation at all and did not even initiate its normal reinvestigation processing procedures.

85. If Experian did conduct the reinvestigations requested by Plaintiffs, Experian failed to perform reasonable investigations.

86. Experian knows that the FCRA does not permit it to simply parrot the information it receives from furnishers; yet this is exactly what Experian does both when it initially reports information and when it *investigates* consumer disputes.

87. Even prior to Plaintiffs' requests for reinvestigation, Experian maintained sufficient information about the NILT account for Experian to conclude that the account was being inaccurately reported and/or that NILT's reporting of the account was not reliable.

88. Experian failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' consumer reports in violation of Section 1681e(b).

89. As a proximate result of this conduct, Plaintiffs suffered actual damages including, but not limited to, the loss of credit, loss of the ability to purchase and benefit from credit, reduction in the credit limit or credit terms from at least one other creditor, mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, and embarrassment.

90. Experian negligently violated Section 1681e; alternatively, Experian willfully violated Section 1681e.

91. Experian negligently violated Section 1681i; alternatively, Experian willfully violated Section 1681i.

92. Plaintiffs suffered damages as a result of these violations for which Plaintiffs are entitled to recover under Section 1681o or, alternatively, Section 1681n.

## JURY DEMAND

93. Plaintiffs demand a trial by jury.

## REQUEST FOR RELIEF

Plaintiffs respectfully requests that this Court enter judgments against NILT; Trans Union; Equifax; and Experian for negligent and/or willful violations of the FCRA and award Plaintiffs' actual damages, including damages for mental and emotional pain, distress, anguish, humiliation, frustration, anxiety, embarrassment, and damage to credit reputation; statutory damages; punitive damages; and costs and attorney's fees. Plaintiffs further request such other relief as the Court deems just and proper.

Dated: September 29, 2020

/s/ Jacob M. Polakoff
Jacob M. Polakoff, Bar No. 035832006
jpolakoff@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604

Hans W. Lodge, MN Bar No. 0397012
hlodge@bm.net
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: (612) 607-7794
Fax: (612) 584-4470

Guerino Cento
cento@centolaw.com
CENTO LAW
5666 Carrollton Avenue
Indianapolis, Indiana 46220
Tel.: (317) 908-0678