**LINDABURY, MCCORMICK, ESTABROOK & COOPER**
53 Cardinal Drive
P.O. Box 2369
Westfield, N.J. 07091
(908) 233-6800
**Attorneys For Defendant Nissan
 Motor Acceptance Corporation**
**SLF-0274**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW RITZ and MICHAEL RITZ, | : Civil Action No. 3:20-cv-13509 |
| Plaintiffs | : |
| -vs- | : **STATEMENT OF** |
| | : **UNDISPUTED MATERIAL FACTS** |
| NISSAN-INFINITI LT; TRANS UNION, | : **SUBMITTED BY NISSAN MOTOR** |
| LLC, EQUIFAX INFORMATION | : **ACCEPTANCE CORPORATION IN** |
| SERVICES, LLC; and EXPERIAN | : **SUPPORT OF SUMMARY JUDGMENT.** |
| INFORMATION SOLUTIONS, INC., | : |
| Defendants. | : |

The following Statement of Undisputed Material Facts is submitted in support of the Motion for Summary Judgment filed on behalf of Nissan Motor Acceptance Corporation improperly plead as Nissan-Infiniti LT (hereinafter referred to as "**NMAC**"):

3465270v1

1. On September 29, 2020, plaintiffs Andrew Ritz and Michael Ritz[1] (hereinafter referred to collectively as "**Ritz**" unless otherwise designated) commenced this action against NMAC; TransUnion, LLC; Equifax Information Services, LLC; and Experian Information Solutions, Inc. (See Complaint attached to the accompanying Certification of Steven L. Fox, Esq., dated August 31, 2022, **Exhibit "A"**.)

2. NMAC filed an Answer. (See Fox Cert., **Exhibit "B"**.)

3. Subsequently, Ritz dismissed their claims against TransUnion, LLC; Equifax Information Services, LLC; and Experian Information Solutions, Inc., leaving NMAC as the remaining defendant. (See Fox Cert., **Exhibit "C"**.)

4. Ritz alleges that NMAC willfully or negligently violated the Fair Credit Reporting Act ("**FCRA**"), 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681(n), and 15 U.S.C. §1681(o), by reporting inaccurate or incomplete information to the Credit Reporting Agencies related to an automobile lease, failing to investigate Ritz's request for reinvestigations and failing to respond to Ritz's requests for reinvestigation. (See Fox Cert., **Exhibit "A"**.)

## The Lease and Relevant Terms

5. On or about May 10, 2017, Ritz leased a 2017 Nissan Sentra from non-party DCH Freehold Nissan. DCH Freehold Nissan then assigned the lease to Nissan-Infiniti LT for which NMAC acts as servicer. The lease provided for twenty-four monthly payments, with the lease maturity date of May 9, 2019. (See Fox Cert., Exhibit "D".)

---

[1] Andrew Ritz is the son of Michael Ritz. At the time of their depositions, they resided at the same address.

2

6. On or about April 17, 2019, Ritz requested a three (3) month end of lease extension, which was approved by NMAC. (See Fox Cert., **Exhibit "E".**)

7. The lease provides that "When your Lease terminates . . . you will return the Vehicle to a Nissan dealer or other location we specify. You will complete a statement of this Vehicle's mileage at termination as required by federal law. If you keep possession of this Vehicle past the end of the lease term, you will continue to pay the monthly payments . . ." (See Fox Cert., **Exhibit "D", paragraph 12.**)

8. Ritz was aware that keeping the vehicle beyond August 9, 2019, would result in the need "to make another lease payment of $181.51." (See Fox Cert., **Exhibit "K",** Responses to Nissan's First Set of Interrogatories, Andrew Ritz, interrogatory number 11, relevant portion at the beginning of page 18 to first paragraph on page 19.)

## Procedure for Returning Leased Vehicle and Ritz Failure to Comply

9. Prior to the expiration of the lease term, as extended, NMAC provided Ritz with information for the procedure for turning in the leased vehicle and terminating the lease. This process requires an inspection of the leased vehicle and instructs Ritz in all bold letters to "[s]chedule your complimentary, but required, vehicle inspection," and that he is "required to complete a Federal Odometer/Lease Termination Statement." (See Fox Cert., **Exhibit "F".**)[2]

10. At his deposition, Ritz testified that he "may have looked at probably" the lease end information. (See Fox Cert., **Exhibit "G",** Andrew Ritz's deposition transcript, page 15, line 11 to page 16, line 18.)

---

[2] Ritz produced Exhibit F in discovery.

11. Despite clear statements requiring an appointment to be scheduled to turn in the vehicle,[3] Ritz stated he did not think a lease return appointment was required. (See Fox Cert., **Exhibit "G"**, Andrew Ritz's deposition transcript, page 14, lines 10 to 14.)

12. On August 9, 2019, without scheduling an appointment or inspection necessary to terminate the lease, Ritz appeared unannounced at DCH Freehold Nissan (a non-party in this action and not a related entity to NMAC) to turn in the leased vehicle. (See Fox Cert., **Exhibit "G"**, Andrew Ritz's deposition transcript, page 13, line 7 to page 14, line 14.)

13. An employee of the dealership informed Ritz that an appointment was necessary and therefore the dealership would not be returning the car for Ritz. (See Fox Cert., **Exhibit "G"**, Andrew Ritz's deposition transcript, page 16, line 22 to page 18, line 9.)

14. Andrew Ritz testified at his deposition that the employee [of the dealership] told him that the vehicle would be towed back to his house because the dealership could not keep the vehicle on its lot. (See Fox Cert., **Exhibit "G"**, Andrew Ritz's deposition transcript, page 19, line 23 to page 20, line 5.)

15. Without the appointment, the dealership was unable to meet with Ritz to inspect the leased vehicle and to complete legally required documents and forms. (Id.)

16. An appointment is necessary when turning in a leased vehicle to inspect the leased vehicle and to sign legally required documentation and forms and specifically, an odometer statement. (See Fox Cert., **Exhibit "H"**, Deborah Donley's deposition transcript, page 88, line 23 to page 92, line 25.)

---

[3] The End of Lease instructions provide three options at the end of the lease. Two of the options includes the same initial bold heading of "**1 - Schedule your complimentary, but required, vehicle inspection.**" The third option involves the customer keeping the vehicle.

4

17. Ritz's contractual obligation to sign the odometer statement is expressly stated in the Lease Agreement which Ritz signed. (See Fox Cert., **Exhibit "D"**, page 3, section 12.)

18. Federal law requires an odometer statement to be executed when a lease terminates. (See Fox Cert., **Exhibit "U"**, 49 CFR § 580.7.)

19. While at the dealership on August 9, 2019, a verbal altercation ensued between Ritz and the dealership representative, not NMAC, regarding Ritz not having an appointment and the dealership's inability to inspect the vehicle, meet with Ritz to sign the documents and terminate a/k/a "ground" the vehicle. (See Fox Cert., **Exhibit "G"**, Andrew Ritz's deposition transcript, page 16, line 22 to page 18, line 9.)

20. On August 9, 2019, Ritz tossed the leased vehicle's keys on a desk and abruptly walked out without the vehicle being inspected and without signing the contractually and legally required documents and forms including the odometer statement. (See Fox Cert., **Exhibit "G"**, Andrew Ritz's deposition transcript, page 19, line 18 to page 20, line 15.)

21. The required documents to terminate the lease were not signed. The vehicle was abandoned, it was not properly grounded or turned in; the lease was not terminated. (See Fox Cert., **Exhibit "H"**, Deborah Donley's deposition transcript, page 88, line 23 to page 92, line 25; and **Exhibit "I"**, NMAC's amended answers to plaintiffs' first set of interrogatories, interrogatory number 1.)

22. When a leased vehicle is turned in, it needs to be grounded by the dealership to be taken back into inventory and for the lease to be terminated. (See Fox Cert., **Exhibit "H"**, Deborah Donley's deposition transcript, page 107, line 11 to page 108, line 4.)

23.     In order for the leased vehicle to be grounded (and lease terminated), the lessee, such as Ritz, is required to sign an odometer statement. (See Fox Cert., **Exhibit "H"**, Deborah Donley's deposition transcript, page 108, line 5 to page 109, line 9.)

24.     Ritz did not sign the odometer statement on August 9, 2019. (See Fox Cert., **Exhibit "H"**, Deborah Donley's deposition transcript, page 109, lines 10 to 13.)

25.     Ritz returned to the dealership on September 20, 2019, to complete the documents and forms required to terminate the lease, to complete the lease return, including the odometer statement. (See Fox Cert., **Exhibit "I"**, NMAC's amended answers to plaintiffs' first set of interrogatories, interrogatory number 1; **Exhibit "K"**, Responses to Nissan's First Set of Interrogatories, Andrew Ritz, interrogatory number 11, relevant portion page 21, third paragraph to page 22, first paragraph.)

26.     On or about September 27, 2019, NMAC received notice from the dealership that the vehicle was grounded for purposes of the lease and Ritz's contractual obligations terminated. (See Fox Cert., **Exhibit "I"**, NMAC's amended answers to plaintiffs' first set of interrogatories, interrogatory number 1.)

27.     Based on information received by NMAC from the dealership that the lease termination was completed on September 20, 2019, Ritz turned in the leased vehicle late. (Id.)

28.     Due to failing to relinquish possession of the vehicle prior to the end of the lease term, an additional monthly payment was due August 9, 2019, pursuant to the terms of the lease agreement. (See Fox Cert., **Exhibit "D"** at Paragraph 12; **Exhibit "W"**, Ritz 000354).

29.     Ritz failed to make the $181.51 monthly payment, and on August 19, 2019, Ritz was sent a billing statement noting that there was $181.51 past due and an additional $181.51 due

6

on September 9, 2019. (See Fox. Cert., **Exhibit "W"**, Ritz 000379; Deposition of Tanya Messmer, Page 34, Line 19 to Page 35, Line 2).[4]

30.  Ritz subsequently disputed the reporting of the account based upon his contention that he was never 30 days late on any payment. **(Fox Cert., Exhibit "K",** Responses to Nissan's First Set of Interrogatories, Andrew Ritz, interrogatory number 7, relevant portion pages 4 to 5; Fox Cert., **Exhibit "W"**, Ritz 238.)

31.  Ritz's disputes were predicated upon his contention that he did not owe further monthly payments under the terms of the lease agreement because he left the vehicle at the dealership as described above. [Fox Cert., **Exhibit "W"**, Ritz 000190, 000228-000229].

32.  NMAC undertook good faith investigations regarding Ritz's complaints, including engaging in communications with the dealership and Andrew Ritz, and concluded that the reporting was accurate. (See Fox Cert., **Exhibit "I"**, NMAC's amended answers to plaintiffs' first set of interrogatories, interrogatory number 1.)

33.  NMAC concluded that a payment was owed and unpaid based upon the untimely grounding of the vehicle. (Fox Cert., **Exhibit "W"**, Ritz 000227 and 230.)

34.  Nonetheless, despite the reporting being accurate, after a series of disputes and discussions with the dealership and Andrew Ritz, on January 6, 2020, NMAC elected to submit an AUD to the Credit Reporting Agencies to remove the late payment entry from Ritz's credit reports. (See Fox Cert., **Exhibit "V"**, page age 22, line 22 to page 23, line 7.)

35.  NMAC's election to submit an AUD to the Credit Reporting Agencies was roughly only four months from NMAC responding to the first dispute and confirming the thirty-day

---

[4] Ritz was also ultimately charged a $395.00 vehicle disposition fee upon surrendering the vehicle, as well as a disposition fee tax of $26.17. (Id.) The disposition fee and disposition fee tax are charges unrelated to Ritz's untimely return of the leased vehicle as they are charges assessed upon the return and termination of a leased vehicle. (See Fox Cert., **Exhibit "F"**, End of Lease document bate stamped Ritz 000169 to Ritz 000176, pages 3, 5 and 6.)

3465270v1

delinquency notation. (See Fox Cert., **Exhibit "H"**, Deborah Donley's deposition transcript, page 50, line7 to page 52, line 11.)

### Ritz's Lack of Provable Damages.

36.     During discovery, Andrew Ritz signed interrogatories which were notarized stating that he sustained pecuniary damages of $100,000.00 and non-pecuniary damages of $100,000.00. (See Fox Cert., **Exhibit "K"**, Ritz deposition transcript, page 19, lines 1 to 17.)

37.     Michael Ritz signed interrogatories which were notarized stating that he sustained pecuniary damages of $26,000.00 and non-pecuniary damages of $100,000.00. (See Fox Cert., **Exhibit "L"**, Ritz deposition transcript, page 19, lines 1 to 17.)

38.     At his deposition, Andrew Ritz testified he was able to purchase another vehicle without any credit issue. Andrew Ritz purchased another car for cash in or about April or May of 2019, prior to the incident forming the subject matter of this lawsuit. (See Fox Cert., **Exhibit "G"**, Ritz deposition transcript, page 19, lines 1 to 17.)

39.     As a result of this incident, Andrew Ritz was never denied any credit card. (Id. at page 27, lines 16 to 20.)

40.     Andrew Ritz applied for and received a USAA American Express credit card after the incident. (Id. at page 29, lines 23 to page 30, line 9.)

41.     Andrew Ritz has about 9 or 10 credit cards. (Id. at page 30, lines 10 to 13.)

42.     Andrew Ritz had applied and received a Chase Amazon credit card as well. (Id. at page 30, lines 14 to line 25.)

43.     Andrew Ritz never applied, nor was denied any loan or mortgage after August 2019. (Id. at page 31, lines 1 to 3.)

44. Andrew Ritz was not denied any insurance benefits because of the subject credit reporting. (Id. at page 31, lines 12 to 21.)

45. Andrew Ritz is unaware of any adverse employment action as a result of any credit reporting by NMAC. (Id. at page 31, lines 4 to 11.)

46. Andrew Ritz testified he did not suffer quantifiable losses or expenses as a result of the action in August 2019. (Id. at page 33, lines 21 to 24.)

47. Regarding alleged non-pecuniary damages such as lost sleep, nervousness, frustration, mental anguish, injury to reputation, Andrew Ritz testified he did not seek any type of medical treatment. (Id. at page 34, lines 2 to 11.)

48. Andrew Ritz never took time off from work because of any alleged emotional distress, nor did he lose any work opportunities. (Id. at page 34, lines 12 to 17.)

49. Andrew Ritz did not seek medical attention, counseling or therapy for mental distress. (Id. at page 34, lines 18 to 22.)

50. Regarding loss of reputation, Andrew Ritz testified that at Staples copies were made regarding correspondence with defendants. Andrew Ritz testified he believes the machines at Staples record the documents copied. Ritz speculates that Staples' personnel making the copies may have noticed the subject matter of the documents Andrew Ritz arranged for copying.[5] However, no one at Staples ever commented to Andrew Ritz about any issue raised in this action. (Id. at page 35, lines 3 to 21.)

51, Andrew Ritz was not prescribed any medication for any injuries allegedly suffered as a result of NMAC's alleged action. (Id. page 35, line 22 to page 36, line 1.)

---

[5] Ritz, not NMAC, was the one disclosing the information which he believes *may have* impacted his reputation.

52. Michael Ritz was never denied any application for credit since August 2019. (See Fox Cert., **Exhibit "J"**, Michael Ritz's deposition transcript, at page 20, lines 2 to 8.)

53. Michael Ritz was able to refinance his home in 2019 and then again in 2021. (Id. at page 20, line 9 to page 21, line 1.)

54. Since August of 2019, Michael Ritz has never sought any sort of employment. (Id. at page 21, lines 2 to 5.)

55. Since August of 2019, Michael Ritz was not denied any sort of credit opportunities he wanted to pursue. (Id. at page 21, lines 6 to 9.)

56. Since August of 2019, Michael Ritz has not sustained any financial loss as a result of the allegations in this action. (Id. at page 22, line 25 to page 23, line 3.)

57. Michael Ritz did not seek any sort of medical attention for non-pecuniary damages such as loss of sleep, nervousness, frustration. (Id. at page 23, lines 4 to 11.)

58. Michael Ritz did not seek any type of counseling or therapy for non-pecuniary losses. (Id. at page 23, lines 12 to 14.)

59. Michael Ritz did not seek any sort of medical attention for loss of sleep or psychiatric assistance for non-pecuniary losses. (Id. at page 23, lines 15 to 18.)

60. Michael Ritz did not take any medication, nor was placed on any medication, to resolve the alleged non-pecuniary issues. (Id. at page 23, lines 19 to 23.)

61. At his deposition, Michael Ritz did not articulate any damage to reputation. (Id. at page 24, lines 1 to 9.)

62. At his deposition, Michael Ritz did not articulate any damage to family work and well-being. (Id. at page 24, line 10 to page 25, line 4.)

63. Michael Ritz has not articulated any basis for future damages. (Id. at page 25, lines 5 to 17.)

Lindabury, McCormick, Estabrook & Cooper
Attorneys for Defendant Nissan Motor
Acceptance Corporation

*/s/ Steven L. Fox*
Steven L. Fox, Esq.
Partner

Dated: August 31, 2022