# Exhibit K

United States District Court
District of New Jersey
Trenton Division

| | |
|---|---|
| **Andrew Ritz** and **Michael Ritz**, | Case No. 3:20-cv-13509-FLW-DEA |
| Plaintiffs, | |
| v. | |
| **Nissan-Infiniti LT**; **Trans Union, LLC**; **Equifax Information Services, LLC**; and **Experian Information Solutions, Inc.**, | |
| Defendants. | |

## Responses to Nissan's First Set of Interrogatories, Andrew Ritz

1. Identify the person answering these Interrogatories, all persons who assisted in the preparation of the answers, and state how each person participated in the preparation of the answers and identify their Social Security numbers.

    **Response:** Plaintiff objects to this interrogatory on the grounds that it seeks information protected by the attorney client privilege and work product doctrine. Plaintiff objects to this request on the grounds that it is overly broad in that it seeks the social security number of Plaintiff's counsel. That information will not be provided. Subject to these objections, Plaintiff identifies the following persons: Andrew Ritz and Guerino Cento.

2. State your full name (complete first name, middle name, and last name), nicknames, former names, and/or aliases which you have used and the

1

| Document Description | Bates Numbers |
|---|---|
| Experian Disclosure (EXPERIAN_20-cv-13509_00406_AR-EXPERIAN_20-cv-13509_00413_AR) | EXPERIAN_20-cv-13509_00409_AR-EXPERIAN_20-cv-13509_00410_AR |

6. With respect to each application or extension of credit identified in response to the preceding Interrogatory, state whether you allege that any action and/or inaction of NMAC or any other person or entity affected such application for or extension of credit in any way. If so, please specify what effect such action and/or inaction allegedly had, including but not limited to, the denial of credit, any increase in variance in the applicable interest rate (and the amount of such increase, if any), any variance in any of the terms of the transaction, identify all persons with knowledge of the foregoing and state the details of their knowledge.

   **Response:** Not applicable. *See* Response to Interrogatory No. 5.

7. Identify each and every inaccuracy you contend exists or ever existed in any consumer report or disclosure prepared by any consumer reporting agency, which forms the basis of this suit. With regards to each such alleged inaccuracy, identify: (a) the date and preparer of the consumer report or disclosure in which it appeared; (b) the date upon which you first became aware of the alleged inaccuracy, and how you became aware of it; (c) what

you contend is inaccurate and why; and (d) all persons with knowledge of the foregoing and state the details of their knowledge.

**Response:** Nissan inaccurately reported Plaintiff's Nissan account payment history. Plaintiff made each payment due on the Nissan account on time and was never late. All reporting which reflects a late payment or an amount due which exceeds the actual amount due was inaccurate, including the reporting of a late payment in August 2019, September 2019 or October 2019. The inaccurate payment history existed on the consumer reports which can be identified by reference to the inquiries posted to Plaintiff's credit files as shown on the following documents:

| Document Description | Bates Numbers |
| --- | --- |
| Trans Union Disclosure (TU-000106-TU000115) | TU-000111 |
| Equifax ACIS Auto Maintenance (EFX-RITZ000122-EFX-RITZ000135) | EFX-RITZ000122-EFX-RITZ000123 |
| Experian Disclosure (EXPERIAN_20-cv-13509_00406_AR-EXPERIAN_20-cv-13509_00413_AR) | EXPERIAN_20-cv-13509_00409_AR-EXPERIAN_20-cv-13509_00410_AR |

The inaccurate payment history also existed on the following disclosures:

Around 2000, I experienced a credit meltdown due to mismanaging my credit. I had one card from that point, a Washington Mutual Bank Visa or MasterCard, which later became a Chase Slate Visa. Through years of diligence and hard work, I built my credit history back to even better than before; a better than 800 FICO score when I walked into the Freehold, NJ, Nissan dealership with my father in May 2017.

My father is my only living, immediate family. I need the best credit history available to weather when it is only me. I have arm nerve damage from a 2010 work-related fracture/dislocation accident. This makes for a very difficult time in the job market. Every effort must be made to with my current employer (11 years now). Having a solid credit history is ever more critical.

I've had conversations with my father about must having solid credit and what that can make happen for me. Buying a new or used car and purchasing insurance for it; renting a place to live; buying a place to live (my ultimate goal). Without the level of credit history I had already achieved before the Nissan lease experience, I can't imagine how much more difficult (or impossible) for these things to happen.

The Nissan Lease Extension Agreement clearly stated that Nissan wanted their car returned no later than Aug 09, 2019. There wasn't to be additional extension (via NMAC chat, 07-23-2019). On the morning of

08-09-2019, at the Freehold, NJ, Nissan leasing dealership, the Sales Manager did not want to return the car without an appointment. The lease contract doesn't have any requirement for an appointment to return the car end-of-lease -- only to return to a Nissan dealer or other location specified by Nissan. I offered a copy of the lease agreement to the Sales Manager, showing him that Nissan wanted their property back no later than that day. My only choice was to leave the car on the lot, let him know the car was on his lot (he threatened to have the car towed back to my house), leave both keys to the car on his desk (he later followed us on to the lot where the returned car was and yelled, "You'll never get another car!" as we were driving away in a different car), and surrender both license plates to the Freehold, NJ Motor Vehicle Services office and get a receipt for them. If I happened to keep the car past this day, my thinking was that I would have to make another lease payment of $181.51. A payment that would have to be credited to my lease account that very day or a late payment and default, which would be my error. I would also be holding on to the car without the owner's permission.

Once home on Aug 09, I relayed via Nissan Finance Portal chat function what had happened at the dealership, where their car was now located, and the condition it was returned in (washed, vacuumed and within the mileage allowance). I paid the End Of Lease Statement, received on time

19

them chat, the lease contract and extension agreement, to illustrate what could easily be seen with them. That I returned the car according to instructions, where and on the date I was supposed to, and had paid every amount owed before the dates due.

Every waking and non-waking moment was occupied with how to fix this – who to contact and who to write a letter to. If my credit was irreparably wrecked for any period of time with this, how to buy a car with a recent late experience on a car lease? Replacing the 2017 Nissan was a 2003 Toyota with high mileage.

My father and I had frequent discussions about what to do. What could be done? On 09-20-2019, there was a phone call to NMAC with Shanella and later Tee of Lease Maturity. The car wasn't "grounded". I was angry. This was wrecking my credit. Tee arranged for my father and I to go the the Freehold, NJ, Nissan dealership to complete an Odometer Statement (the Sales Manager wasn't handing us required paperwork on Aug 09). Once at the dealership, we were shown a table in the showroom to wait. The Sales Manager came by with the Odometer form and I began filling it out. The Sales Manager was standing over me and watching as I was filling it out. I wrote that day's date where it was supposed to go and also that the car was actually returned on Aug 09, 2019. The Sales Manager grabbed the form off of the table, ripped it up, and told me, "You can't write that". Other

21

customers in the showroom were watching us. He told us to follow him to his office. I was angry and embarrassed. It was the way he spoke down to us. He called Tee at NMAC. Once I got a chance to speak, I told Tee that having only 09-20-2019 as the only date on the form was misleading – the car actually was returned on 08-09-2019. I wanted to make the form more accurate.

My father and I left and returned home. Either I called Tee or she called us, can't remember. She relayed that the car had been "grounded" by the dealership, and within the mileage allowance. A letter on the dealership's letterhead had been prepared. She would fax me a copy, which she did.

On 09-26-2019, I contacted NMAC via chat (later considered a verbal dispute by NMAC). Even though vehicle "grounding" was now complete, nothing was being corrected. I was still being billed (due 09-25-2019). I was worried about my existing creditors. Each of them perform periodic Account Review, and noted on credit reports. My creditors write in their Account Agreements that upon negative information by another creditor, they can raise my interest rate, lower my credit limit, or cancel my credit card with them altogether. I was looking to have Nissan's incorrect late payment reporting removed as soon as possible, to protect my existing credit.

09-13-2019 -- online Equifax, Experian, and Trans Union disputes.

10-04-2019 – I viewed my Experian credit report via their website.

22

facts regarding NISSANINFINITI LT, or the correct context of it. Hmmm, why is the grid suppressed? This never ends. This issue has been ongoing for nearly two years.

4.  Identification and Quantification of Damages

Pecuniary Damages: Plaintiff identifies, describes and quantifies the following pecuniary damages:[10]

| Pecuniary Damages | Amount |
|---|---|
| Credit Denials | $ 0.00 |
| Lost Job Opportunities | $ 0.00 |
| Insurance Denials | $ 5,000.00 |
| Financial Loss | $ 7,700.00 |
| Delay in Obtaining Approval for Credit | $ 38,500.00 |
| Loss of Credit Opportunity | $ 38,500.00 |
| Out-Of-Pocket Expenses | $ 300.00 |
| Time Expended in Disputing Errors | $ 10,000.00 |
|  | $ 100,000.00 |

These itemizations are based upon information currently known and, therefore, are subject to change as discovery continues.

Non-Pecuniary Damages: Plaintiff identifies, describes and quantifies the following non-pecuniary damages:[11]

---

[10] Amounts are based in part on prior relevant FCRA jury verdicts.

[11] Amounts are based in part on prior relevant FCRA jury verdicts.

25

| Non-Pecuniary Damages | Amount |
|---|---|
| Loss of Sleep | $ 7,500.00 |
| Nervousness | $ 7,500.00 |
| Frustration | $ 17,500.00 |
| Mental Anguish Over Consumer Report | $ 17,500.00 |
| Injury to Reputation | $ 5,000.00 |
| Injury to Family Work and Sense of Well Being | $ 7,500.00 |
| Humiliation | $ 7,500.00 |
| Embarrassment | $ 7,500.00 |
| Mental Distress | $ 15,000.00 |
| Future Damages for Continuing Violation | $ 7,500.00 |
|  | **$ 100,000.00** |

These itemizations are based upon information currently known and, therefore, are subject to change as discovery continues.

Punitive Damages: At trial Plaintiff intends to seek punitive damages for Nissan's willful violations in the amount of $5 million dollars.[12]

12. If you contend you have experienced any sort of physical, mental or emotional distress as the result of any alleged action or inaction of NMAC or any other person or entity, describe with particularity each symptom you claim to have experienced, the frequency and severity of each symptom, the names of all persons with knowledge of the foregoing and the details of their knowledge, and state whether you have ever suffered them or sought

---

[12] Amounts are based in part on prior relevant FCRA jury verdicts.

26

## Verification

I, Andrew Ritz, have read the foregoing interrogatories and the answers to those interrogatories, which are true according to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

[Notary stamp: VERONICA C GRYGO, Notary Public - State of New Jersey, My Commission Expires Sep 5, 2024]

Andrew Ritz

/s/Guerino Cento
Guerino Cento
CENTO LAW
5666 Carrollton Avenue
Indianapolis, IN 46220
(317) 908-0678
cento@centolaw.com

RESPONSES TO NISSAN'S FIRST SET OF INTERROGATORIES, ANDREW RITZ

ANDREW RITZ AND MICHAEL RITZ
V.
NISSAN-INFINITI LT; TRANS UNION, LLC; EQUIFAX INFORMATION SERVICES, LLC; AND EXPERIAN INFORMATION SOLUTIONS, INC.