# Exhibit O

2022 WL 1718039
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Sandy ESPERANCE, Plaintiff,
v.
DIAMOND RESORTS, Defendant.
Betsy Fumelus, Plaintiff,
v.
Diamond Resorts, Defendant.

No. 1:18-cv-10248, No. 1:18-cv-10237
|
Filed 05/27/2022

**Attorneys and Law Firms**

Richard H. Kim, Esq., The Kim Law Firm, LLC, 1500 Market Street, Suite W-3110, Philadelphia, Pennsylvania 19102, On behalf of Plaintiffs, Sandy Esperance and Betsy Fumelus.

William Patrick Reiley, Ballard Spahr LLP, 700 East Gate Drive, Suite 330, Mt. Laurel, NJ 08054-0015, On behalf of Defendant, Diamond Resorts.

**OPINION**

O'HEARN, District Judge.

**INTRODUCTION**

\*1 Plaintiffs, sisters Sandy Esperance and Betsy Fumelus, bring these Fair Credit Reporting Act suits against Diamond Resorts.[1] Presently before the Court is Diamond Resorts' consolidated Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (*Esperance* Docket, ECF No. 71; *Fumelus* Docket, ECF No. 70).[2] The Court heard oral argument on May 26, 2022 pursuant to Local Rule 78.1. For the reasons that follow, Diamond Resorts' consolidated Motion is **GRANTED**.

**I. BACKGROUND**
In May 2009, Sandy Esperance and her sister, Betsy Fumelus, ("Plaintiffs"), purchased a timeshare in Orlando, Florida from Tempus Palms International ("Tempus"). (Pla's Am. Supp. Stmt. of Mat. Facts ("PASMF"), ECF No. 77 ¶ 10).[3] Plaintiffs memorialized their purchase by jointly signing a note, mortgage, and pending note (collectively "Loan Documents"). (PASMF ¶ 11). The Loan Documents required Plaintiffs to make monthly payments to Tempus for the duration of the loan. (PASMF ¶ 11). At some point after execution of the loan, Tempus became a wholly owned subsidiary of Diamond Resorts. (PASMF ¶ 15).

After several years of making timely payments on the loan, Plaintiffs became dissatisfied with their purchase. (PASMF ¶ 12). Following their failed attempts at resolving their concerns directly with Tempus/Diamond Resorts, (PASMF ¶ 16, 17), Plaintiffs retained California-based attorney, Mitchell Sussman. (PASMF ¶ 18). Mr. Sussman, who has been criticized for his questionable practices with respect to timeshare exits, specializes "in ridding timeshare owners of their timeshare obligations." *Westgate Resorts, Ltd v Sussman*, 387 F. Supp. 3d 1318, 1324 (M.D. Fla. 2019). After being retained by Plaintiffs, Mr. Sussman sent a letter to Diamond Resorts in December 2015 notifying it that Plaintiffs were resigning from and would "no longer be making any payments on the time-share." (PASMF, Ex. G). There is no evidence in the record of Diamond Resorts' response, if any, to Mr. Sussman's December 2015 letter. Thereafter, on April 22, 2016, Mr. Sussman sent a congratulatory letter addressed to Plaintiffs stating that they "are no longer the owner[s]" and "not responsible for future fees in connection with the timeshare." (PASMF, Ex. H). Attached to Mr. Sussman's letter was a quitclaim deed-in-lieu of foreclosure ("Deed-in-Lieu") that purportedly transferred the timeshare back to Diamond Resorts. (PASMF, Ex. H). Plaintiffs made their final payment on the loan on June 23, 2015. (PASMF ¶ 26).

\*2 After Plaintiffs stopped making payments on the loan, at the advice and counsel of Mr. Sussman, (PASMF ¶ 23), Diamond Resorts continued to report their account as open to Experian Information Solutions, LLC ("Experian"), a credit reporting agency ("CRA"), (PASMF ¶ 27). In doing so, Diamond Resorts reported the full balance of the account, including fees and interest. (PASMF, Ex. S).

Upon discovery of the open accounts on their respective credit reports, Plaintiffs collectively submitted a total of five credit disputes to Experian. (PASMF ¶ 32, 38, 44, 50, 57). In turn, Experian transmitted five corresponding automated credit dispute verification ("ACDV") forms to Diamond Resorts. (PASMF ¶ 32, 38, 44, 50, 57). These ACDVs are described below.

### September 2017 ACDV (PASMF, Ex. I)

Ms. Fumelus' first dispute was received by Diamond Resorts on or about September 25, 2017. (PASMF, Ex. I). Ms. Fumelus' credit report prior to the dispute reported an open balance of $10,258. (PASMF, Ex. I). In her dispute report to Experian, Ms. Fumelus stated "[t]his account was always paid on time. Please remove the late's [sic] from my report." (ECF No. 71-3, Ex. 5). However, because Experian does not attach the initial consumer dispute information to its ACDVs, (Decl. Jennifer Waters, ECF No. 71-2 ¶ 21), the ACDV Experian submitted to Diamond Resorts only provided the following dispute information: "DISPUTE REASON: 106 – Disputes present/previous Account Status, History. Verify Accordingly." (PASMF, Ex. I). Upon receipt and review of the September 2017 ACDV, Diamond Resorts' credit-reporting coordinators requested that Experian reduce the balance from $10,258 to $6,970 to reflect the principal balance only.[4] (PASMF, Ex. I). Diamond Resorts otherwise verified the account information. (PASMF, Ex. I).

### November 2017 ACDV (PASMF, Ex. K)

Ms. Fumelus' second dispute was received by Diamond Resorts on or about November 2, 2017. (PASMF, Ex. K). Ms. Fumelus' credit report prior to the dispute reported an open balance of $10,381. (PASMF, Ex. K). In her dispute report to Experian, Ms. Fumelus stated "I have never been late on a payment with this company. Please remove this inaccuracy from my report immediately." (ECF No. 71-3, Ex. 6). However, the ACDV Experian submitted to Diamond Resorts only provided the following dispute information: "DISPUTE REASON: 106 – Disputes present/previous Account Status, History. Verify Accordingly." (PASMF, Ex. K). Upon receipt and review of the November 2017 ACDV, Diamond Resorts' credit-reporting coordinators requested that Experian reduce the balance from $10,381 to $6,970 to reflect the principal balance only. (PASMF, Ex. K). Diamond Resorts otherwise verified the account information. (PASMF, Ex. K).

### December 2017 ACDV (PASMF, Ex. L)

Ms. Fumelus' third dispute was received by Diamond Resorts on or about December 12, 2017. (PASMF, Ex. L). Ms. Fumelus' credit report prior to the dispute reported an open balance of $10,630. (PASMF, Ex. L). The ACDV Experian submitted to Diamond Resorts provided the following dispute information: "DISPUTE REASON: 112 – Claims inaccurate information. Did not provide specific dispute. Provide complete ID and verify account information. I AM NOT [sic] LONGER THE OWNER OF THE PROPERTY THIS SHOULD NOT BE ON HERE ANYMORE." (PASMF, Ex. L). Upon receipt and review of the December 2017 ACDV, Diamond Resorts' credit-reporting coordinators requested that Experian reduce the balance from $10,630 to $6,970 to reflect the principal balance only. (PASMF, Ex. L). Diamond Resorts otherwise verified the account information. (PASMF, Ex. L).

### April 2018 ACDV (ECF No. 71-2, Ex. B[5])

*3 Ms. Fumelus' fourth dispute was received by Diamond Resorts on or about April 2, 2018. (ECF No. 71-2, Ex. I). Ms. Fumelus' credit report prior to the dispute reported an open balance of $10,999. (ECF No. 71-2, Ex. I). In her dispute report to Experian, Ms. Fumelus stated: "[p]lease see the attached documentation of the Quit Claim Deed that states that this account was closed on 2/24/2016. Please report this account as closed immediately. I have spoken with Diamond Resorts and they have stated that the account was closed but refuse to send me any documentation. This account stating that it is still open is a clear violation of the Fair Credit Reporting Act!" (ECF No. 71-3, Ex. 7). However, the ACDV Experian submitted to Diamond Resorts provided only the following dispute information: "DISPUTE REASON: 112 – Claims inaccurate information. Did not provide specific dispute. Provide complete ID and verify account information." (ECF No. 71-2, Ex. I). Upon receipt and review of the April 2018 ACDV, Diamond Resorts' credit-reporting coordinators requested that Experian reduce the balance from $10,999 to $6,970 to reflect the principal balance only. (ECF No. 71-2, Ex. I). Diamond Resorts otherwise verified the account information. (ECF No. 71-2, Ex. I).

### May 2018 ACDV (PASMF, Ex. P)

Ms. Esperance's first and only dispute was received by Diamond Resorts on or about May 11, 2018. (ECF No. 71-2, Ex. J). Ms. Esperance's credit report prior to the dispute reported an open balance of $11,248. (ECF No. 71-2, Ex. J). The ACDV Experian submitted to Diamond Resorts provided the following dispute information: "DISPUTE REASON: 112 – Claims inaccurate information. Did not provide specific dispute. Provide complete ID and verify account information." (ECF No. 71-2, Ex. J). Under a section titled "FCRA Relevant Information" the ACDV also provided the following: "WE HAVE LEGAL PROOF THAT THE ACCOUNT IS NO LONGER MINE AND I AM NOT RESPONSIBLE FOR THIS ACCOUNT. PLEASE

REMOVE IT FROM MY REPORT ASAP." (ECF No. 71-2, Ex. J). Upon receipt and review of the May 2018 ACDV, Diamond Resorts' credit-reporting coordinators requested that Experian reduce the balance from $11,248 to $6,970 reflect the principal balance only. (ECF No. 71-2, Ex. I). Diamond Resorts otherwise verified the account information. (ECF No. 71-2, Ex. I).

Dissatisfied by the review and resolution of their credit disputes, Plaintiffs filed these present actions against Diamond Resorts and Experian.

## II. PROCEDURAL HISTORY

On June 6, 2018, Plaintiffs filed separate but materially identical Complaints against Experian and Diamond Resorts alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). (*Esperance* and *Fumelus* Dockets, ECF No. 1). The two Complaints were consolidated for discovery purposes. On September 3, 2018, Plaintiffs filed materially identical Amended Complaints. (*Esperance* and *Fumelus* Dockets, ECF No. 21). On July 26, 2018, Diamond Resorts filed motions to dismiss both Amended Complaints (*Esperance* and *Fumelus* Dockets, ECF No. 13), which were denied on April 5, 2019 (*Esperance* and *Fumelus* Dockets, ECF Nos. 26, 27). On April 21, 2021, Plaintiffs filed a Stipulation of Dismissal as to Defendant Experian. (*Esperance* Docket, ECF No. 61; *Fumelus* Docket, ECF No. 60). Factual discovery ended on September 30, 2021, and Diamond Resorts timely filed its present Motion for Summary Judgment ("Motion") on October 22, 2021 (*Esperance* Docket, ECF No. 71; *Fumelus* Docket, ECF No. 70).

## III. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable [factfinder] could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' " *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

*4 The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Ridgewood Bd. of Educ. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

## IV. DISCUSSION

Plaintiffs assert that Diamond Resorts violated 15 U.S.C. § 1681s–2(b) by "willfully and negligently failing to conduct a reasonable investigation of the inaccurate information that Plaintiff[s] disputed." (Am. Compl. ¶ 30).[6] In its Motion, Diamond Resorts argues that it is entitled to summary judgment because it has consistently reported factually accurate information with respect to Plaintiffs' account and has otherwise complied with its obligations under the FCRA. (*See generally* ECF No. 70). For the reasons that follow, the Court agrees Diamond Resorts is entitled to summary judgment.

### A. The FCRA

The FCRA was enacted in 1970 to "protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)). The FCRA imposes a variety of duties on credit reporting agencies and the persons or entities that "furnish" information to them. *Id.*

Diamond Resorts is a "furnisher" of information and thus its legal obligations are set forth in § 1681s–2 of the FCRA. *See* 15 U.S.C. § 1681s–2. Pursuant to § 1681s–2(a), a person or entity "shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *Id.* § 1681s–2(a)(1)(A). However, "there is no private right of action based on a furnisher's failure to comply with § 1681s–2(a) because "enforcement of these provisions is left to federal agencies." *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596, 608 (E.D. Pa. 2008) (citing 15 U.S.C. §§ 1681s–2(c), (d)). In other words, a furnisher of credit information owes no legal duty to a private plaintiff under the FCRA for reporting factually inaccurate information in the first instance. Rather, a private cause of action against a furnisher of credit information is only available after the furnisher is notified of a dispute by a CRA. *See Id.* § 1681s–2(b).

\*5 Under § 1681s–2(b), once a CRA, such as Experian, notifies a credit furnisher, such as Diamond Resorts, of a dispute, the credit furnisher must: "1) conduct an investigation with respect to the disputed information; 2) review all relevant information received from the CRA; 3) report the results of the investigation to the CRA; and 4) if the information is found to be inaccurate or incomplete, report the results to all CRAs to which it originally provided the erroneous information." *Van Veen v. Equifax Information*, 844 F. Supp. 2d 599, 604 (E.D. Pa. 2012) (citing 15 U.S.C. § 1681s–2(b)).

The Third Circuit has held that any investigation undertaken by a furnisher in response to disputed information must be "reasonable." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011). Normally, the issue of reasonableness is a "question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Seamans*, 744 F.3d at 864–65 (internal quotations and citations omitted). When assessing the reasonableness of an investigation, a factfinder should consider the furnisher's investigation "as it relates to the content of the notice of dispute sent by the CRA to the furnisher." *Seamans*, 744 F.3d at 865. For example, "where a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted." *Id.* (citing *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 616–17 (6th Cir. 2012)).

Further, "[c]ourt[s] have explicitly held that a showing of inaccuracy is essential to a [Section] 1681s-2(b) claim." *Gatanas v. Am. Honda Fin. Corp.*, No. 20-7788, 2020 WL 7137854, at \*3 n.3 (D.N.J. Dec. 7, 2020) (citing *Pittman v. Experian Info. Sols. Inc.*, 901 F.3d 619, 629 (6th Cir. 2018) (collecting cases)); *see alsoShareef v. Chrysler Capital*, No. 21-3858, 2022 WL 1045533, at \*3 (E.D. Pa. Apr. 7, 2022); *Ostrander v. Trans Union LLC*, No. 20-5227, 2021 WL 3271168, at \*11 (E.D. Pa. July 30, 2021). This is because "[a]bsent an inaccuracy, the consumer cannot "satisfy the

statutory requirement of actual damages" or 'Article III's requirement of actual damages or concrete harm.' " *Shareef*, 2022 WL 1045533, at *3 (quoting *Ostrander*, 2021 WL 3271168, at *11).

Relatedly, "even if the [reported] information is technically correct, it may nonetheless be inaccurate if, through omission, it 'create[s] a materially misleading impression.' " *Seamans*, 744 F.3d at 865 (quoting *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008)). Said otherwise, unless the reported information is technically incorrect or materially misleading, "the furnisher cannot be liable for [its] failure to investigate or for an inadequate investigation." *Shareef*, 2022 WL 1045533, at *3 (citing *Holland v. Trans Union LLC*, No. 21-152, 2021 WL 5804375, at *7 (E.D. Pa. Dec. 7, 2021)). Thus, Plaintiffs must first show that the information by Diamond Resorts was inaccurate or materially misleading.

Finally, consistent with the First Circuit's decision in *Chiang v. Verizon New England*, courts have held that "a plaintiff's required showing [under § 1681s–2(b)] is factual inaccuracy rather than the existence of disputed legal questions," such as whether a plaintiff was legally billed for the services disputed. 595 F.3d 26, 35 (1st Cir. 2010); *see also Hafez v. Equifax Info. Servs.*, LLC, No. 20-9019, 2021 WL 1589459, at *5 (D.N.J. Apr. 23, 2021); *Van Veen*, 844 F. Supp. 2d at 605; *Leboon v. Equifax Info. Servs.*, LLC, No. CV 18-1978, 2019 WL 3230995, at *4 (E.D. Pa. July 17, 2019); *Murphy v. Ocwen Loan Servicing*, LLC, No. 13-00555, 2014 WL 651914, at *7 (E.D. Cal. Feb. 19, 2014). "[F]urnishers are neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." *Chiang*, 595 F.3d at 35.

### B. Plaintiffs' Allegations

*6 Plaintiffs allege that Diamond Resorts furnished the following inaccurate information: 1) reporting an open balance on Plaintiffs' account despite the recording of the Deed-in-Lieu; 2) reporting inconsistent balance amounts; 3) not reporting the account as "charged off;" 4) reporting a balance that did not credit two $500 payments made pursuant to the pending note; and 5) reporting Plaintiffs' account as late 30-days for June 2015. (*See generally* ECF No. 76). The Court will consider each allegation in turn.[7]

### Deed-in-Lieu

Plaintiffs first assert that it was factually inaccurate for Diamond Resorts to report Plaintiffs' account balance as open because the timeshare was transferred back to Diamond Resorts pursuant to the Deed-in-Lieu. (ECF No. 76 at 1). In its Motion, Diamond Resorts argues: 1) the Deed-in-Lieu was never accepted by Diamond Resorts; and 2) any alleged inaccuracy with respect to the acceptance or rejection of the Deed-in-Lieu involves a legal dispute outside the scope of a furnisher's investigatory responsibilities under § 1681s–2(b). (ECF No. 71-1 at 27).

As discussed above, courts have routinely held that furnishers are not required to investigate the legal validity of the underlying debts they report. *See supra* pp. 12–13; *see also Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019); *Herrell v. Chase Bank USA, N.A.*, 218 F. Supp. 3d 788, 793 (E.D. Wis. 2016); *Alston v. Wells Fargo Home Mortg.*, No. 13-3147, 2016 WL 816733, at *10 (D. Md. Feb. 26, 2016).

Here, the Court finds that the validity of Plaintiffs' debt to Diamond Resorts vis-à-vis the Deed-in-Lieu is a legal dispute rather than a factual one. Specifically, in response to the December 2017 and May 2018 ACDVs that expressly identified the Deed-in-Lieu as a basis of dispute, Diamond Resorts' credit reporting coordinators were "faced with the legal question" of whether Plaintiffs' balance was "legally valid" with respect to Plaintiffs' purported transfer of legal title back to Diamond Resorts. *Alston*, 2016 WL 816733, at *10. However, "furnishers are neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." *Chiang*, 595 F.3d at 35. The question of whether Plaintiffs' submission of the Deed-in-Lieu is sufficient to vitiate the mortgage documents and timeshare interest is a threshold question that can only be resolved by a court of law. Accordingly, Plaintiffs' claim with respect to this issue cannot form the basis of a claim under § 1681s–2(b) of the FCRA.

### Reporting Inconsistent Balances

Plaintiffs next assert that it was factually inaccurate for Diamond Resorts to report inconsistent and fluctuating

balances even though Plaintiffs stopped making payments in June 2015. (ECF No. 76 at 2). As discussed above, Diamond Resorts was reporting inconsistent balances to Experian by sometimes including fees and interest to the principal and sometimes not. In support of its Motion, Diamond Resorts argues that this claim must fail as a matter of law because despite the acknowledged inconsistency, "the reporting was nevertheless accurate as Plaintiffs indisputably owed these amounts to Diamond under the Loan Documents." (ECF No. 78 at 9) (citing Decl. Jennifer Waters, ECF No. 71-2 ¶ 54).

*7 While it appears uncontested that Diamond Resorts was inconsistent in its reporting, Plaintiffs cite no authority that requires furnishers of credit to report one way or the other – including fees and interest to the principal balance or not. More importantly, Plaintiffs neither dispute the accuracy of Diamond Resorts' calculation of fees and interest nor do they discuss or allege that the inconsistent reporting created a "materially misleading impression." *Seamans*, 744 F.3d at 865. With no genuine issue of material fact as to the factual accuracy of the balances reported on Plaintiffs' account, Diamond Resorts is entitled to summary judgement on this claim.

Charge-Off
Plaintiffs next assert that it was factually inaccurate for Diamond Resorts to report Plaintiffs' account as "open" instead of "charged-off," even though the account was over 180 days late. (ECF No. 76 at 11). In support of this allegation, Plaintiffs rely on Diamond Resorts' 2015 and 2016 Securities and Exchange ("SEC") 10-K filings that provide in relevant part: "[t]he Company charges off Vacation Interests notes receivable upon the earliest of (i) the customer's account becoming over 180 days delinquent or (ii) the completion of cancellation or foreclosure proceedings." (ECF No. 76, Ex. 8). Plaintiffs also rely on an email from a Diamond Resorts' employee that purportedly "further establish[es] that a representative of Diamond had thought the Timeshare was being credit reported as 'charged off.' " (ECF No. 76 at 11). In its Motion, Diamond Resorts argues that Plaintiffs' claim must fail as a matter of law because Diamond Resorts is neither bound by its SEC filings nor otherwise legally required to "charge-off" Plaintiffs' account.

As a preliminary matter, Plaintiffs' assertion that a Diamond Resorts' employee had communicated that the account was "charged-off" does not seem to be factually supported. The email that Plaintiffs rely on indicates that a Diamond Resorts employee communicated the following to Ms. Fumelus on March 16, 2016: "[the timeshare] is going through a judicial foreclosure so the charge off has not been completed. There is no way to expedite this process as previously advised" (PASMF, Ex. J). This communication is consistent with Ms. Waters' Declaration that "Diamond will not report an account as 'charged-off' until a foreclosure is completed on the timeshare." (ECF No. 71-2 ¶ 55).

Moreover, Plaintiffs do not cite any legal authority that binds furnishers to procedures set forth in their SEC 10-K filings with respect to credit "charge-offs." At least one court has rejected such a theory. *Robinson v. EMC Mortg. Corp*, No. 10-2140, 2013 WL 1245863, at *9 (N.D. Tex. Mar. 26, 2013). In *Robinson*, the Northern District of Texas rejected a plaintiff's claim on summary judgment that a furnisher "was legally required to charge of his account after 180 days of nonpayment" based on an "FDIC statement of policy ... and a Notice pertaining to the policy statement." Although the documents relied upon by the plaintiff in *Robinson* were general filings as opposed to a company specific filing, like a 10-K, this Court finds that Court's reasoning persuasive and equally applicable to this case. Like in *Robinson*, "[n]either of the documents contains any binding statements," "[e]ven if [they] were binding authority, there is nothing in the summary judgment record or briefing that shows that either [the furnisher] or the [ ] Loan is governed by" those documents, and "there is no legal requirement that [the furnisher] charge off the debt." *Id.* at *7, 9. For these reasons, Diamond Resorts is entitled to summary judgement with respect to this claim.

Failure to Report Two Prior Payments and June 2015 Late Assessment
*8 Plaintiffs next allege, for the first time in their opposition to Diamond Resorts' Motion, that Diamond Resorts "failed to recognize two $500 payments that were made in June 2009 and July 2009." (ECF No. 76 at 1). Based on this allegation, Plaintiffs claim that "[e]ven if the Deed-in-Lieu was not accepted, the balance was still not accurate because the $6,970 should have been approximately $1,000 less (or $5,970) based on the payments made by Plaintiffs in June and July 2009 as required by the Mortgage." (PASMF ¶ 61). By "mortgage," Plaintiffs appear to be referring to the "pending note" in the Loan Documents that required Plaintiffs to make payments of $500 on June 12, 2009 and July 12, 2009. (PASMF, Ex. B). In its Motion, Diamond Resorts argues that this allegation, having been raised for the first time in Plaintiffs' opposition to summary judgment, was not properly

alleged in the Amended Complaint and thus must fail as a matter of law.

Plaintiffs also allege, again for the first time in their opposition to Diamond Resorts' Motion, that it was factually inaccurate for Diamond Resorts to "change the historical payment history for Plaintiffs' to late 30 days" for June 2015. (ECF No. 76 at 20). Specifically, Plaintiffs assert that after "accurately reporting that Plaintiffs had positive payment history for June 2015, Diamond at some point later in 2017 or 2018 changed that reporting and started to communicate to Experian that Plaintiffs did not make a payment in that month." (ECF No. 76 at 12).

"[A] party may not raise, in response to a motion for summary judgment, claims which were not raised in the initial pleadings." *Hughes v. Shestakov*, 76 F. App'x 450, 451 n.1 (3d Cir. 2003) (citations omitted). "A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim." *Thomas v. Egan*, 1 Fed. Appx. 52, 54 (2d Cir. 2001); *see also DeCastro v. Lahood*, No. 04-2129, 2009 WL 1067030, at *8 (E.D.N.Y. Apr. 21, 2009) ("Defendant likely would have pursued a different litigation and discovery strategy had it known that plaintiff intended to pursue such a claim."); *Dewees v. Haste*, 620 F. Supp. 2d 625, 635 (M.D. Pa. 2009) ("to the extent Plaintiff is attempting to expand upon his original allegations through argument in his brief it is impermissible").

Here, Plaintiffs' newly raised allegations were never pled in the Amended Complaints and there is no evidence in the record that they were ever raised during discovery so as to give Diamond Resorts notice of Plaintiffs' intention to raise them. Because Plaintiffs' belated claims were not properly alleged, the Court will not consider them.[8] *See Mainor v. Acctcorp of S. Nevada*, No. 16-00183, 2019 WL 4738012, at *4 (D. Nev. Sept. 28, 2019) (refusing to consider new theory of furnisher liability raised for the first time in opposition to summary judgment where "new assertions of liability [were] wholly divorced from those Plaintiff has asserted thus far, granting Defendant no opportunity to develop a defense through discovery devices"); *Bell v. Ditech Fin., LLC*, No. 16-7245, 2017 WL 3575283, at *2 (C.D. Cal. Aug. 1, 2017) (refusing to consider a plaintiff's new allegation raised for the first time in opposition to summary judgement that a furnisher inaccurately listed plaintiff's account as "charged off" because the plaintiff "may not now raise new theories of liability at the summary judgment stage"); *Gustafson v. Experian Info. Sols. Inc.*, No. 14-01453, 2015 WL 3477071, at *6 (C.D. Cal. June 2, 2015) (refusing to consider new theory of liability under the FCRA "because it was never raised in the Complaint.").

*9 Having determined that Plaintiffs have failed to raise a genuine issue of material fact as to whether Diamond Resorts furnished inaccurate information, the Court need not address whether Diamond Resorts' investigations in response to Plaintiffs' disputes were unreasonable.

## V. CONCLUSION

For the foregoing reasons the Court **GRANTS** Diamond Resorts' consolidated Motion for Summary Judgment. An appropriate Order accompanies this Opinion.

**All Citations**

Slip Copy, 2022 WL 1718039

## Footnotes

1   The Complaint and Amended Complaint identify the Defendant as Diamond Resorts. However, the caption in the moving brief and all responsive papers identify the Defendant as Diamond Resorts Holdings, LLC. Defendant has clarified in its Motion that Diamond Resorts' correct name is Diamond Resorts Financial Services, Inc. (*Esperance* Docket, ECF No. 71 at 1; *Fumelus* Docket, ECF No. 70 at 1).

2   Plaintiffs, who are represented by the same attorney, filed two separate suits. As noted in Judge Bumb's prior Opinion in this action, (*Esperance* and *Fumelus* Dockets, ECF No. 26), it is not apparent to the Court that two separate suits were necessary. Because the two actions and their respective filings are identical except

for alleged damages and the names and addresses of the Plaintiffs, the Court will hereafter cite solely to the *Esperance* Docket for purposes of this Motion unless otherwise noted.

3   Unless otherwise noted, the Court does not repeat herein the citations to the record contained in the parties' papers but incorporates them by reference.

4   Diamond Resorts requested this balance modification pursuant to its internal policy to report principal balances only. (ECF No. 71-2 ¶ 53). It is not clear why Diamond Resorts had reported a balance that included fees and interest in the first instance.

5   Plaintiffs' Amended SMF and Opposition Brief misidentify several exhibits. For example, in both their Amended SMF and Opposition Brief, Plaintiffs identify Ms. Fumelus' April 2018 ACDV as "Exhibit M." However, there is no "Exhibit M" in those documents and Ms. Fumelus' April 2018 is not even included in Plaintiffs' Amended SMF. Rather, Ms. Fumelus' April 2018 ACDV is included in Plaintiffs' Opposition Brief under "Exhibit B", a 95-page exhibit which is identified by Plaintiffs' counsel as comprising of the Loan Documents. Similarly, in both their Amended SMF and Opposition Brief, Plaintiffs identify Ms. Esperance's May 2018 ACDV as "Exhibit O." However, "Exhibit O" is a copy of Ms. Fumelus' Experian Dispute Results report. Rather, Ms. Esperance's May 2019 ACDV is attached as "Exhibit P" in Plaintiffs' Amended SMF and also included in the 95-page "Exhibit B" in Plaintiffs' Opposition Brief.

6   In Count II of Plaintiffs' Amended Complaints, the only remaining Count following Experian's dismissal from this action, Plaintiffs also allege a number of other violations as to Diamond Resorts under §§ 1681n and 1681o of the FCRA. (Am. Compl. ¶ 30). However, as acknowledged by Plaintiffs in their opposition brief, (ECF No. 76 at 8 n.4), and further discussed in this Opinion, the FCRA only permits a private cause of action against furnishers of credit information under 15 U.S.C. § 1681s-2b concerning the "duties of furnishers of information upon notice of dispute." Accordingly, the Court limits its discussion to Plaintiffs' claims pursuant to § 1681s-2b.

7   In their Amended Complaints, Plaintiffs also alleged that Diamond Resorts furnished inaccurate information by reporting that Plaintiffs' financing obligations are owed to Diamond Resorts instead of Tempus Palms. (Am. Compl., ECF No. 21 ¶ 9). Plaintiffs have since withdrawn that claim. (ECF No. 76 at 4 n.3).

8   The Court notes that even if these two newly raised allegations were considered, they would still fail as a matter of law. As to the two $500 payments, Plaintiffs have not set forth any evidence that these payments were to be credited against the principal balance of the account at issue. The pending note, (PASMF, Ex. B), makes no reference whatsoever to the mortgage loan. It is clear to the Court upon review of the documents that they are wholly unrelated. Second, the error with respect to the June 2015 payment was not discovered until after Ms. Fumelus' April 2018 credit dispute and there is no indication in the record of any subsequent dispute by Ms. Fumelus, let alone a dispute as to this specific error. At oral argument, Plaintiffs' counsel argued that Ms. Esperance's May 2018 ACDV, (PASMF, Ex. P), should qualify as a subsequent dispute on behalf of Ms. Fumelus as to this issue. However, Ms. Esperance's May 2018 ACDV made no mention of the June 2015 late assessment and Plaintiffs have not submitted any documentation evidencing that Ms. Esperance's credit report showed the same error. Thus, neither of Plaintiffs' newly raised allegations can form the basis of a claim under § 1681s–2(b) of the FCRA even if they were considered.

**End of Document**                                                                © 2022 Thomson Reuters. No claim to original U.S. Government Works.