# Exhibit S

2010 WL 3810870
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

Robert SLACK, et al., Plaintiffs,
v.
SUBURBAN PROPANE
PARTNERS, L.P., et al., Defendants.

Civil Action No. 10–2548 (JLL).
|
Sept. 21, 2010.

**Attorneys and Law Firms**

Patricia A. Barasch, Schall & Barasch, LLC, Moorestown, NJ, for Plaintiffs.

Robert J. Cleary, Proskauer Rose LLP, New York, NY, Defendants.

## OPINION

LINARES, District Judge.

**\*1** This matter comes before the Court by way of Defendants' motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed.R.Civ.P. 78. Based on the reasons that follow, Defendants' motion is granted. Plaintiffs' First Amended Complaint is hereby dismissed without prejudice.

### *BACKGROUND*

Suburban Propane (comprised of a parent company and operating company) is a nationwide marketer and distributor of energy products including propane. (First Am. Compl. ("Complaint or Compl."), ¶ 8). Plaintiffs are residential customers of Suburban Propane. (Compl., ¶¶ 9–16). Most of Suburban Propane's residential customers receive their propane supply through an automatic delivery system which schedules deliveries at dates and times of Suburban Propane's choosing. (Compl., ¶ 28). Another feature of Suburban Propane's residential propane business is that it owns a significant portion of the storage tanks located on its customers' premises and rents these tanks to its customers. (Compl., ¶ 29).

Suburban Propane does not meaningfully disclose how its prices are determined and typically does not disclose the price that it charges, per gallon, until after it has already delivered the propane. (Compl., ¶ 31). The price is not made available to residential customers until after their tank is filled, even when customers have asked for the price ahead of time. (*Id.*). As a result, Suburban Propane's residential customers are often surprised by the prices that Suburban Propane charges them for propane deliveries which frequently exceed competitors' prices and industry averages by significant amounts. (*Id.*).

Suburban Propane has also established a fee structure designed to inhibit the ability of its residential customers to reject propane deliveries once the cost of the delivered propane is disclosed to them. (Compl., ¶ 32). For instance, Suburban Propane charges its residential customers significant restocking or pump out fees to return any propane that has already been delivered to them and charges them a separate fee to pick up their propane tank if they wish to return a rented tank in order to switch service to a competitor. (*Id.*). Suburban does not disclose the amount of these fees at the time that it is soliciting residential customers for their business. (*Id.*).

The Suburban Propane company website states "When you shop at Suburban Propane, you get ... the best value!" (Compl., ¶ 33). In addition, Suburban Propane publicly claims that its prices are "competitive" with those charged by other companies. (*Id.*). To the contrary, Suburban Propane's prices are generally higher than the prevailing market price for propane. (*Id.*). When customers complain about Suburban Propane's exorbitant and arbitrary prices, Suburban Propane has failed to make proper price adjustments and, instead, offers deceptive and misleading explanations and excuses for the overcharges. (*Id.*, ¶ 35).

**\*2** In addition, Suburban Propane has imposed various fees, separate and apart from its propane prices, on its residential customers including but not limited to: regulatory fees, transportation fuel surcharges, tank rental fees, tank pick up fees, tank pump out fees, and restocking fees. (*Id.*, ¶ 37). Suburban Propane has imposed such fees on its residential customers without providing them with proper advance notice of the fees, the amount of the fees or the basis for the fees. (*Id.*, ¶ 38). Some invoices contain no explanation as to the nature of

such fees (Compl., ¶ 39), whereas other invoices contain a fee disclosure statement. (*Id.*, ¶ 40). The fee disclosure statement provides, in pertinent part:

> FEES—The invoice for this delivery may include a REG Fee, Transportation Fuel Surcharge, Emergency/Special Delivery fee and other fees, under appropriate circumstances and when not prohibited by law. The REG fee is charged to recover regulatory compliance costs for implementing policies and procedures, employees training and equipment charges to comply with federald [sic] and state requirements. The REG Fee is being charged instead of including it in the price per gallon of propane. The REG Fee is not being collected on behalf of any government agency.

(Compl., ¶ 40).

Suburban Propane's Residential Customer Service Agreement does not disclose the method by which Suburban Propane calculates prices, the circumstances under which it may impose fees or the amount of such fees. (Compl., ¶¶ 44, 53, 61, 69, 80, 90, 100, 111, 119,). Instead, the Customer Agreement contains information limited to Suburban Propane's "initial" prices and/or fees and states that such prices and/or fees are "subject to future change based upon market fluctuations and other factors," with no further explanation. (Compl., ¶ 44). Plaintiffs reasonably expected that Suburban Propane would charge them a fair and reasonable market price for their propane. (*Id.*, ¶¶ 53, 64, 73, 84, 94, 104, 114).

The Complaint alleges that Suburban Propane has engaged in a practice of deceptively "jacking" its prices and fees for reasons that are inconsistent with market fluctuations or other legitimate business factors. (Compl., ¶ 45). The Complaint also alleges that Suburban Propane's business practices are "fraudulent, deceptive, misleading, unconscionable and unlawful, and knowingly conceal, suppress, and omit material terms relating to Suburban Propane's prices, fees, and service." (Compl., ¶ 47). According to the Complaint, as a result of such fraudulent and deceptive business practices, Plaintiffs have suffered ascertainable damages and losses. (Compl., ¶ 48).

In light of the foregoing, Plaintiffs commenced the instant cause of action, on behalf of themselves and all others similarly situated, in May 2010.[1] Plaintiffs filed a First Amended Complaint in July 2010. The First Amended Complaint contains the following claims: (1) violation of the New Jersey Consumer Fraud Act (Count 1), (2) violation of other states' consumer fraud acts (Counts 2–5), (3) unjust enrichment (Count 6), (4) breach of the covenant of good faith and fair dealing (Count 7), and (5) violation of the Fair Credit Reporting Act (Count 8). Currently before the Court is a motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## *LEGAL STANDARD*

**\*3** For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008). Additionally, in evaluating a plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994).

## *DISCUSSION*

Defendants seek dismissal of each of Plaintiffs' claims. As a preliminary matter, the Court notes that the parties agree that New Jersey law should apply to Plaintiffs' claims. Accordingly no arguments have been raised with respect to Counts 2 through 5 of the Complaint, which contain claims, pled in the alternative, pursuant to various states' consumer fraud laws.

**1. New Jersey Consumer Fraud Act Claim**

To state a claim pursuant to the New Jersey Consumer Fraud Act ("CFA"), a plaintiff must allege three elements: (1) unlawful conduct, (2) an ascertainable loss, and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs ascertainable loss. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 929 A.2d 1076, 1086 (N.J.2007) (internal quotations omitted)

Additionally, to adequately state a claim under the CFA, not only must a plaintiff allege facts sufficient to establish the elements discussed above, but those allegations must be plead with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *See Rait v. Sears, Roebuck and Co.*, No. 08-2461, 2009 WL 250309, at * 4 (D.N.J. Feb.3, 2009); *Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 WL 141628, at *3 (D.N.J. Jan.14, 2008). These requirements may be satisfied "by pleading the date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir.2004) (internal quotations omitted).

Based on the reasons that follow, Plaintiffs' consumer fraud act claim must be dismissed because Plaintiffs have failed to allege that Defendants engaged in an "unlawful practice" within the meaning of the Act. *See* N.J.S.A. § 56:8-2; *Federico v. Home Depot*, 507 F.3d 188, 202 (3d Cir.2007). The CFA defines "unlawful practice" as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise ....

*4 N.J.S.A. § 56:8-2. This broad definition of unlawful practice covers affirmative acts and knowing omissions, as well as regulatory violations. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454, 462 (N.J.1994). However, while a "breach of warranty or contract is unfair to the non-breaching party," a breach of warranty alone is not a per se unlawful practice. *Id.* at 462. A claim under the CFA requires more; it requires that a plaintiff allege "substantial aggravating circumstances." *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir.1997); *Cox*, 647 A.2d at 462. To meet this standard, a plaintiff must demonstrate that the business behavior in question "stand[s] outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416, 655 A.2d 417 (1995).

According to Plaintiffs' opposition brief, Plaintiffs' Complaint alleges the following categories of unlawful practices: (1) unconscionable commercial practice, (2) misleading omissions, and (3) misrepresentations. Defendants urge the Court to apply the Rule 9(b) standard to Plaintiffs' CFA claim in its entirety. Plaintiffs, on the other hand, maintain that Rule 9(b) only applies to CFA claims sounding in fraud; therefore, allegations concerning Defendants' unconscionable commercial practice (which, according to Plaintiffs, do not sound in fraud) are not subject to the heightened pleading standard of Rule 9(b). As a general matter, the Court notes that "[t]he capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice." *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378, 371 A.2d 13 (1977). In any event, the Court need not determine whether the heightened pleading standard of Rule 9(b) applies to Plaintiffs' CFA claim in whole or in part because Plaintiffs' claim, as currently drafted, fails to meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a) (2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Thus, to survive a motion to dismiss:

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "

*Iqbal*, 129 S.Ct. at 1949 (internal citations omitted).

Plaintiffs do not allege that Defendants charged them higher rates or fees than that agreed upon. Based on such allegations, and without more, the Court cannot conclude that Defendants engaged in any unlawful practice. The crux of Plaintiffs' Complaint, as currently drafted, is that: (1) Plaintiffs entered into automatic purchase agreements with Suburban Propane; (2) the agreements provided an "initial" quote of prices and/ or fees with the caveat that such prices and/or fees were subject to change "based upon market fluctuations and other factors;" (3) Suburban delivered the propane to Plaintiffs as agreed upon; and (4) in doing so, Suburban charged prices and/or fees which, according to Plaintiffs, were neither "fair" nor "reasonable."

\*5 "Whether a practice itself is unfair [for purposes of the New Jersey Consumer Fraud Act] is a classic jury question. However, where the claim is based on written statements, the court must make the legal determination of whether a practice can be said to be unfair in light of the written statements." *Hassler v. Sovereign Bank*, 374 Fed. Appx. 341, 344 (3d Cir.2010) (citing *Rosenberg v. Wash. Mut. Bank, FA*, 369 N.J.Super. 456, 849 A.2d 566 (App.Div.2004)). The terms of the Customer Service Agreements between Plaintiffs and Defendants, as alleged in Plaintiffs' own Complaint, clearly provided for and explained the actions that Defendants ultimately took—namely, increasing the prices and/or fees initially quoted based upon external factors. Pursuant to the terms of the parties' agreements, Defendants retained the right to increase the prices and/ or fees associated with Plaintiffs' automatic and recurring purchase of propane without providing advance notice or a corresponding explanation to Plaintiffs. *See* Compl., ¶ 44. Plaintiffs' claim that Suburban Propane engaged in a practice of deceptively "jacking" its prices and fees for reasons that are inconsistent with market fluctuations or other legitimate business factors,[2] contrary to their reasonable expectations,[3] is undercut by Defendants' explicit reservation of the right to increase charges and/or fees in any amount they deem fit (based upon "market fluctuations and other factors.") *Id.*, ¶ 44, 849 A.2d 566.

To the extent Plaintiffs allege that Suburban Propane affirmatively misrepresented the cost of the propane by charging them prices higher than industry averages despite stating on their website that "[w]hen you shop at Suburban Propane, you get ... the best value!" (Compl., ¶ 3 3) and publicly claiming that their prices are "competitive," such statements are "not statements of fact, but are merely expressions in the nature of puffery and thus are not actionable." *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J.Super. 8, 14, 842 A.2d 174 (App.Div.2003). This is particularly so given the express terms of the parties' agreement which, according to the Complaint, give Defendants the right to set their propane prices and/or fees based on market conditions as well as "other factors." (Compl., ¶ 44).

Simply put, Plaintiffs' allegations challenge the enforceability of a contract. Without more, such allegations do not rise to the level of "substantial aggravating circumstances" to constitute an unlawful practice worthy of protection under the New Jersey Consumer Fraud Act. *See, e.g.*, *Suber*, 104 F.3d at 587; *Cox*, 647 A.2d at 462. In other words, Plaintiffs' Complaint, as currently drafted, has not "nudged" their NJCFA claim "across the line from conceivable to plausible." *Iqbal*, 129 S.Ct. at 1951 (citations omitted). Defendants' motion to dismiss this claim is, therefore, granted. Count One of Plaintiffs' Complaint is dismissed without prejudice.

**2. Unjust Enrichment Claim**
\*6 To state a claim for unjust enrichment under New Jersey law, a Plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that Plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519 (1994).

Plaintiffs' Complaint alleges that: (1) Suburban Propane received a benefit from Plaintiffs in the form of payment for propane and/or propane-related services or equipment, and (2) retention of these payments by Suburban

Propane would be unjust since they charged Plaintiffs "unreasonable, excessive, arbitrary, unconscionable, inflated, and/or exorbitant prices for propane without making proper and adequate price disclosures and/or without obtaining meaningful consent to such prices." (Compl., ¶¶ 196–198). Plaintiffs' Complaint admits, however, that the parties' relationships were governed by contracts. (Compl., ¶ 44). Under New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir.1982).

Although Plaintiffs are permitted to plead in the alternative, Plaintiffs' Complaint admits that, in exchange for the payments made by Plaintiffs, Defendants *did*, in fact, deliver the propane they contracted for. (Compl., ¶¶ 31, 52, 56, 63, 71, 82, 92, 93, 102, 103, 111, 122). Plaintiffs' Complaint fails to allege that Plaintiffs expected any *additional* remuneration from Defendants at the time such payments were made *or* that Defendants were otherwise enriched beyond their contractual rights. *See, e.g., VRG Corp.*, 641 A.2d at 526 (explaining that the "unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant"). Because Plaintiffs received the propane they paid for, Plaintiffs have failed to a state a claim for unjust enrichment which is plausible on its face. *See Iqbal*, 129 S.Ct. at 1949; *see, e.g., In re Toshiba Am. HD DVD Marketing and Sales Practices Litig.*, No. 08–939, 2009 WL 2940081, at *14 (D.N.J. Sept.11, 2009) (dismissing unjust enrichment claim where "Plaintiffs paid for HD DVD Players capable of playing HD DVDs and that is exactly what they received."). Defendants' motion to dismiss this claim is, therefore, granted. Plaintiffs' unjust enrichment claim is dismissed without prejudice.

### 3. Implied Covenant of Good Faith and Fair Dealing Claim

Under New Jersey law, all contracts include an implied covenant that the parties to the contract will act in good faith. *See Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420, 690 A.2d 575 (1997). The covenant "mandates that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " *Seidenberg v. Summit Bank*, 348 N.J.Super. 243, 254, 791 A.2d 1068 (App.Div.2002) (quotations omitted). Warning against overly broad constructions of the covenant of good faith, the New Jersey Supreme Court held that "an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent an improper motive." *Brunswick Hills Racquet Club, Inc. v. Rte. 18 Shopping Ctr. Assoc.*, 182 N.J. 210, 231, 864 A.2d 387 (2005). Thus, proof of a party's "bad motive" or "intention" must support a claim of breach of contract grounded on an alleged breach of the implied covenant of good faith and fair dealing. *See Reddy v. MedQuist, Inc.*, No. 06–4410, 2009 WL 250050, at *3 (D.N.J. Jan.29, 2009) (quoting *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 773 A.2d 1121 (2001)).

*7 Plaintiffs' Complaint alleges that "Suburban Propane breached the covenant of good faith and fair dealing by exercising its purported discretionary price-making and fee-making authority under its residential propane contracts arbitrarily, unreasonably and/or capriciously, in bad faith, with the objective of preventing its residential propane customers from receiving their reasonably expected fruits under such contracts." (Compl., ¶ 203). Plaintiffs' Complaint contains no facts in support of its contention that Defendants exercised their discretionary price-making and fee-making authority in bad faith. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 129 S.Ct. at 1949. Without such "factual content," the Court is unable to draw the reasonable inference that Defendants had a "bad motive" in exercising their discretionary price-making authority. *Id.; see generally* Wilson, 168 N.J. at 251, 773 A.2d 1121 ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance."). Defendants' motion to dismiss this claim is, therefore, granted. Plaintiffs' implied covenant of good faith and fair dealing claim is dismissed without prejudice.

### 4. Fair Credit Reporting Act Claim

Section 1681b(f) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f), provides that:

> A person shall not use or obtain a consumer report for any purpose

unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f). Thus, the FCRA "imposes liability for using or obtaining a consumer report in violation of the FCRA, not simply for releasing or disseminating a report." Cole v. U.S. Capital, 389 F.3d 719, 731 (7th Cir.2004); see, e.g., Cappetta v. GC Servs. Ltd. P'ship, 654 F.Supp.2d 453, 457 (E.D.Va.2009) ("The FCRA allows access to a consumer's credit report only under specific circumstances where a permissible purpose exists."). Some courts have found that a plaintiff must establish three elements in order to sustain a claim of improper use or acquisition of a credit report: "(1) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose." Godby v. Wells Fargo Bank, N.A., 599 F.Supp.2d 934, 938 (S.D.Ohio 2008) (citations omitted). In addition, a plaintiff must allege that he or she has sustained actual damages as a result of the statutory violation. See, e.g., Ruffin–Thompkins v. Experian Info. Solutions, Inc., 422 F.3d 603, 610 (7th Cir.2005) (dismissing FCRA claim where plaintiff had not demonstrated "actual damages" and noting that "[t]he FCRA does not presume damages; instead, as discussed above, the consumer must affirmatively prove that she is entitled to damages.").

\*8 Plaintiffs' Complaint alleges that one day after the filing of Plaintiffs' original Complaint in this matter, Suburban Propane requested and obtained a consumer report relating to named plaintiff Robert Slack without Slack's authorization or knowledge. (Compl., ¶ 206). The Complaint further alleges that, at the time Defendants requested and obtained Slack's consumer report, Slack had already ceased doing business with Defendants, and owned no money to Defendants (Compl., ¶ 207). According to Plaintiffs, Suburban Propane did not obtain Slack's consumer report for a purpose authorized by the FCRA and that, as a result of Defendants' unauthorized request for his consumer report, Slack has suffered a reduction in his credit score. (Compl., ¶ 212).

Plaintiffs have provided no facts in support of their contention that Slack has suffered actual damages as a result of Defendants' alleged violation of the Fair Credit Reporting Act. Plaintiffs allege merely that Slack has suffered a reduction in his credit score. Such allegations, without more, fail to raise the possibility of relief above the speculative level. See, e.g., Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). For instance, Slack "has not alleged any actual damages that he suffered as a consumer flowing from the alleged decrease in credit score such as that he was denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit." Young v. Harbor Mortor Works, Inc., No. 07–31, 2009 WL 187793, at \*5 (N.D.Ind. Jan.27, 2009). Absent such factual content, Plaintiffs have failed to adequately plead a claim under the Fair Credit Reporting Act. Defendants' motion to dismiss as to this claim is, therefore, granted. Plaintiffs' FCRA claim is dismissed without prejudice.

## CONCLUSION

Based on the reasons set forth above, Defendants' motion to dismiss is granted in its entirety. Plaintiffs' First Amended Complaint is hereby dismissed without prejudice. To the extent the deficiencies in Plaintiffs' claims can be cured by way of amendment, Plaintiffs are granted leave to amend such claims. Failure to do so, **on or before October 18, 2010,** will result in dismissal of such claims *with* prejudice.

An appropriate Order accompanies this Opinion.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3810870


## Footnotes

1     This Court's jurisdiction is premised on 28 U.S.C. § 1332(d) (2).

2     (Compl., ¶ 45).

3     (Compl., ¶¶ 53, 64, 73, 84, 94, 104, 114).

**End of Document**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2022 Thomson Reuters. No claim to original U.S. Government Works.  7