# Exhibit T

2009 WL 187793
Only the Westlaw citation is currently available.
United States District Court,
N.D. Indiana,
Hammond Division.

Michael J. YOUNG, Plaintiff,
v.
HARBOR MORTOR WORKS, INC., et al., Defendants.

Civil Action No. 2:07–CV–31 JVB.
|
Jan. 27, 2009.

**Attorneys and Law Firms**

Michael J. Young PHV, Westchester, IL, for Plaintiff.

Harold G. Hagberg, Hagberg Latulip, Schererville, IN, Richard A. Wohlleber PHV, Stephen T. Sipe PHV, Chapman and Cutler, Chicago, IL, for Defendants.

## MEMORANDUM ORDER

JOSEPH S. VAN BOKKELEN, District Judge.

\*1 On December 18, 2008, Magistrate Judge Paul R. Cherry filed and served on the parties his Report and Recommendation (DE 74) on Defendant Harris N.A's Motion to Dismiss Plaintiff's amended complaint (DE 64). Judge Cherry recommended that this Court grant Defendant's Motion. In the Report and Recommendation he advised the parties that they had ten days from the date of service within which to file objections and noted that the failure to file a timely objection would result in waiver of the right to challenge the Recommendation before both the District Court and the Court of Appeals. *Willis v. Caterpillar, Inc.,* 199 F.3d 902, 904 (7th Cir.1999); *Hunger v. Leninger,* 15 F.3d 664, 668 (7th Cir.1994; *The Provident Bank v. Manor Steel Corp.,* 882 F.2d 258, 260–261 (7th Cir.1989).

To date, Plaintiff has filed no objections to the Report and Recommendation. Accordingly, this Court adopts Judge Cherry's recommendations and **GRANTS** Defendant Harris N.A.'s Motion to Dismiss (DE 64). Harris N.A. is dismissed as a party to this action.

SO ORDERED.

## FINDINGS, REPORT, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE PURSUANT TO 28 U.S.C. § 636(b)(1)(B) & (C)

PAUL R. CHERRY, United States Magistrate Judge.

This matter is before the Court on Harris N.A.'s Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) [DE 64], filed by Harris N.A. ("Harris") on May 21, 2008. Plaintiff Michael J. Young filed a Response on June 20, 2008, and Harris filed a Reply on October 8, 2008.

On September 30, 2008, District Court Judge Joseph Van Bokkelen entered an Order [DE 72] referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). For the following reasons, the Court recommends that the District Court grant the Motion to Dismiss and dismiss the Amended Complaint brought as against Harris.

## PROCEDURAL BACKGROUND

On November 13, 2006, Plaintiff Michael J. Young filed a Complaint and Jury Demand in the United States District Court for the Northern District of Illinois against Harris, Harbor Motor Works, Inc. d/b/a Harbor Honda ("Harbor Honda"), Kathy VanHouten, and Robert McDermott.

On December 27, 2006, Defendant Harbor Honda filed a Motion to Dismiss for Improper Venue or in the Alternative Motion to Transfer Venue, which was granted in part on January 18, 2007. On February 6, 2007, the case was transferred to the United States District Court for the Northern District of Indiana.

On May 16, 2007, and May 21, 2007, respectively, Harbor Honda and Harris each filed a Motion to Dismiss pursuant to Rule 12(b)(6). On March 4, 2008, District Court Judge Van Bokkelen granted in part and denied in part the Motions to Dismiss, dismissing Count III of Young's Complaint and giving Young thirty days to file an amended complaint.

**\*2** On April 4, 2008, Young filed an Amended Complaint against all Defendants named in the original Complaint and attached Exhibits A and B, which are the signature pages of credit applications dated October 16, 2006, and October 21, 2006, respectively.

On May 21, 2008, Harris filed the instant Motion to Dismiss Young's Amended Complaint Pursuant to Rule 12(b)(6) with an accompanying Memorandum in Support and Exhibits. On June 20, 2008, Young filed a Response to the Motion to Dismiss.

On June 25, 2008, Harris filed a Motion to Strike Plaintiff's Response to Harris' Motion to Dismiss, or in the Alternative for an Extension of Time to File Its Reply. On July 2, 2008, Young filed a Response to the Motion to Strike.

On September 29, 2008, Judge Van Bokkelen entered an Order referring the Motion to Dismiss and the Motion to Strike to Magistrate Judge Paul R. Cherry. Subsequently, on September 30, 2008, Judge Van Bokkelen vacated the referral order as to the Motion to Strike and reaffirmed the order as to the Motion to Dismiss. Judge Van Bokkelen denied the Motion to Strike and granted Harris an extension of time to file its reply to the Motion to Dismiss.

On October 8, 2008, Harris filed a Reply in support of the Motion to Dismiss.

## 12(b) (6) STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir.1990). To survive a 12(b)(6) motion to dismiss, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), such that the defendant is given "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Second, the factual allegations in the complaint on its face must be sufficient to raise the possibility of relief "above the speculative level," assuming that all of the allegations in the complaint are true. *Bell Atlantic,* 127 S.Ct. at 1965, 1973 n. 14;*see also Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 667–68 (7th Cir.2008); *Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir.2007). However, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic,* 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Barnes v. Briley,* 420 F.3d 673, 677 (7th Cir.2005). In ruling on such a motion, the Court may consider the complaint, the answer, and any written instruments attached to the complaint as exhibits. *See Beanstalk Group, Inc. v. AM Gen. Corp.,* 283 F.3d 856, 858 (7th Cir.2002); *Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir.1988); Fed.R.Civ.P. 10(c).

**\*3** In support of its Motion to Dismiss, Harris submitted exhibits not referenced in Young's Amended Complaint; similarly, Young attached exhibits to his response brief that are not referenced in the Amended Complaint. Federal Rule of Civil Procedure 12(d) provides that a motion to dismiss pursuant to Rule 12(b)(6) must be treated as a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court."Fed.R.Civ.P. 12(d). The decision whether to convert a motion to dismiss into a motion for summary judgment is left to the discretion of the court. *See Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir.1998). Having reviewed the evidence and the arguments, the Court finds that the federal and state claims can be resolved on the instant motion to dismiss without reference to materials outside the pleadings. Accordingly, the Court recommends that the District Court decline to convert the instant motion to dismiss into a motion for summary judgment, and, in issuing the instant report and recommendation, the Court does not consider the additional materials.

## FACTUAL BACKGROUND

These facts are based on the allegations in the Amended Complaint and the signature pages of the credit applications attached thereto. On October 16, 2006, Young submitted an American Honda Financial Services ("Honda Financial")

Credit Application for financing to McDermott in his capacity as an employee of Harbor Honda. At that time, Young stated both orally to McDermott and in writing on the application that only Honda Financial was authorized to request a copy of his credit report. Young also informed McDermott that he was once involved in litigation with another dealership for failure to comply with his request that his credit application be submitted only to the financing company he had authorized.

On October 21, 2006, VanHouten, another Harbor Honda employee, requested that Young complete a second Honda Financial Credit Application, and Young filled out the application. On October 21, 2006, Young again stated both orally to VanHouten and in writing on the application that he was authorizing only Honda Financial to obtain a copy of his credit report.

On October 16, 2006, and/or October 21, 2006, Harbor Honda submitted Young's October 16, 2006 Honda Financial Credit Application and/or October 21, 2006 Honda Financial Credit Application to Harris. On October 22, 2006, TransUnion notified Young that Harris had requested and obtained a copy of his credit report on October 21, 2006. Young alleges that Harris obtained his credit report without his authorization. Young alleges that his credit score has decreased as a result of Harris' request for the credit report.

## DISCUSSION

In the Motion to Dismiss, Harris first argues that Counts I and II of Young's Amended Complaint fail to state a claim because Harris had a permissible purpose in requesting his credit report and because Young has failed to allege actual damages. Next, Harris seeks dismissal of Counts III and IV of the Amended Complaint, brought under the Indiana Deceptive Consumer Sales Act ("IDCSA"), arguing that Young only alleges acts by Harbor Honda and not by Harris and that the IDCSA claims are preempted by the FCRA. As for Young's Indiana state common law claims, Harris argues that the common law fraud claims in Counts V and VI fail to allege material misrepresentations made by Harris, that the breach of contract claim in Count VII fails to allege the existence of a contract between Young and Harris, and finally, that the claim of invasion of privacy by intrusion in Count VIII is preempted by the FCRA and fails to allege the type of privacy intrusion that is required for such a claim.

### A. Fair Credit Reporting Act

*4 In Counts I and II of the Amended Complaint, Young alleges that Harris willfully failed to comply with the FCRA under 15 U.S.C. § 1681n and breached its duty to Young to comply with the FCRA under 15 U.S.C. § 1681*o* when it requested his credit report without his permission. Harris asserts that it had a permissible purpose under the FCRA in running Young's credit check because Young sought financing and because Harris gathered information about Young with reason to believe that the information was being gathered in connection with an extension of credit to Young. Harris also argues that Young has not specifically pled his actual damages under the FCRA.

The FCRA defines "Permissible purposes of consumer reports" to include furnishing a consumer report

> [t]o a person which it has reason to believe ... intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer ....

15 U.S.C. § 1681b(a)(3)(A). The Seventh Circuit has held that, when a consumer initiates a credit transaction at a car dealership by requesting financing, the FCRA "does not require that consumers expressly approve each request for a report." *Stergiopoulos v. First Midwest Bancorp,* 427 F.3d 1043, 1046–47 (7th Cir.2005).[1]

In *Stergiopoulos,* the plaintiffs had filled out credit applications in connection with purchasing new cars. The dealers then sought third-party lenders for the loans, one of which was the defendant bank, who requested the plaintiffs' credit reports. 427 F.3d at 1044. The bank ran the plaintiffs' credit checks without their explicit consent or knowledge. *Id.* The documents that the plaintiffs signed for the credit check did not specifically state that dealers could shop their contracts to an unlimited number of third party lenders or

specifically to the defendant bank. *Id.* at 1045. The Seventh Circuit found that the defendant bank satisfied the FCRA by intending to use the credit check in connection with the plaintiffs' credit transactions because the plaintiffs initiated the transactions and because there was "a direct link between the [plaintiffs'] search for credit and the bank's credit report request" such that the connection was "clear." *Id.* at 1047.

Like the plaintiffs in *Stergiopoulos,* Young initiated the transaction to purchase a car from the dealer and was not informed that third party lenders would be requesting his credit report. However, unlike the purchasers in *Stergiopoulos,* Young took the proactive measure of explicitly writing "NONE" on the line of the credit application following the phrase: "You are notified that your application may be submitted to (Name and Address required)." [2] As a result, the credit applications indicate that only Honda Financial was authorized to obtain credit information about Young. Importantly, the Amended Complaint alleges that Honda Harbor submitted to Harris the credit application containing this written limitation. Therefore, although Young initiated the search for credit with the dealership and although Harris' credit search was in connection with that credit transaction, Young specifically limited who could check his credit to one entity—Honda Financial. In contrast with *Stergiopoulos,* Young alleges that the signature pages of the credit applications put Harris on notice that it did not have permission to run Young's credit check and thus Harris' unauthorized credit search violated the FCRA. Because Harris is alleged to have been on notice that it did not have permission to request Young's credit report based on the notation in the credit application that the application would not be submitted to any entity other than Honda Financial, the Court finds that the motion to dismiss fails on this basis.

*5 However, as an alternative basis for dismissal of the FCRA claim, Harris argues that Young has failed to allege any basis for concluding that he suffered actual damages, asserting that he must plead that he suffered an actual injury, such as a loss of credit. On this basis, the Court recommends dismissal of Counts I and II. The FCRA provides for actual damages or statutory damages and such punitive damages as the court allows for willful noncompliance of the FCRA. *See* 15 U.S.C. § 1681n. The FCRA also provides for actual damages for negligent violations. *See* 15 U.S.C. § 1681o. Harris cites *Ruffin–Thompkins v. Experian Info. Solutions, Inc.,* 422 F.3d 603, 610 (7th Cir.2005), for the holding that a plaintiff must affirmatively prove that he is entitled to damages. Although that is an accurate statement of a plaintiff's burden at trial (or when trying to establish a genuine issue of material fact on a motion for summary judgment as in *Rufin–Thompkins* ), on a motion to dismiss, the factual allegations in a plaintiff's complaint must only raise the possibility of relief "above the speculative level."

In his Amended Complaint, Young alleges the following damages against Harris: "That as a result of Defendant Harris' unauthorized request of Plaintiff Young's credit report, Plaintiff Young's credit score decreased." Am. Compl. ¶¶ 20, 26. [3] However, Young has not alleged any actual damages that he suffered as a consumer flowing from the alleged decrease in credit score such as that he was denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit. *See, e.g., Wantz v. Experian Info. Solutions,* 386 F.3d 829, 833 (7th Cir.2004); *Crabill v. Trans Union, LLC,* 259 F.3d 662, 664–67 (7th Cir.2001); *Johnson v. Wells Fargo Home Mortgage, Inc.,* 558 F.Supp.2d 1114, 1134 (D.Nev.2008); *Panko v. Discover Fin. Servs., LLC,* 458 F.Supp.2d 580, 586 (N.D.Ill.2006) (citing *Crabill,* 259 F.3d at 664);*Schroeder v. Capitol Indem. Corp.,* No. 05–C–643, 2006 WL 2009053, at *3 (E.D.Wis. July 17, 2006); *Ruffin–Thompkins v. Experian Info. Sys., Inc.,* No. 03 C 683, 2003 WL 25719228, at *5 (N.D.Ill.Dec.31, 2003); *Evantash v. G.E. Capital Mortgage Servs., Inc.,* No. Civ. A. 02–CV–1188, 2003 WL 22844198, at *5 n. 7 (E.D.Pa. Nov.25, 2003). Nor has he alleged any non-pecuniary damage such as loss of reputation or physical or mental effects. *See Sarver v. Experian Info. Solutions,* 390 F.3d 969, 971 (7th Cir.2004). Accordingly, Young has failed to allege actual damages as required under the FCRA sufficient to raise the possibility of relief above the speculative level.

Because Young's claims under the FCRA cannot survive, it follows that his claims for punitive damages must fail. However, even if Young had stated a claim under § 1681o, Harris is correct that Young has improperly sought punitive damages under § 1681o, which does not allow for punitive damages, and dismissal of the claim for punitive damages under § 1681o would be appropriate.

*6 Therefore, because Young has failed to allege actual damages, the Court recommends that Judge Van Bokkelen dismiss Counts I and II of the Amended Complaint against Harris.

Case 3:20-cv-13509-GC-DEA   Document 66-25   Filed 08/31/22   Page 6 of 10 PageID: 528

Young v. Harbor Mortor Works, Inc., Not Reported in F.Supp.2d (2009)

### B. Indiana State Law Claims

In addition to his federal FDCA claim, Young alleges claims under the Indiana Deceptive Consumer Sales Act ("IDCSA" or the "Act") and alleges Indiana common law claims of fraud, breach of contract, and invasion of privacy. The Court considers the motion to dismiss as to each claim in turn.

*1. Indiana Deceptive Consumer Sales Act Claim*
In the Amended Complaint, Young alleges that Harris willfully failed to comply with the IDCSA by deceptively and fraudulently requesting and acquiring Young's credit report without authorization and by deceptively and fraudulently misrepresenting to Young that the APR through Honda Financial was the lowest APR available. Harris argues that Young's IDCSA claims should be dismissed for failure to state a claim because the alleged deceptive acts forming the basis of the claims are predicated on misrepresentations by Harbor employees, not by Harris. Harris also argues that Young has failed to allege either a "curable" or "incurable" act as required under the IDCSA and that the FCRA preempts all of Young's IDCSA claims.

To state a claim under the IDCSA, a plaintiff must allege that the defendant engaged in one or more deceptive acts, as defined in the Act. *See* Ind.Code § 24–5–0.5–4(a). There are two possible types of actionable deceptive acts under the Act—"uncured" deceptive acts and "incurable" deceptive acts. *McKinney v. State*, 693 N.E.2d 65, 68 (Ind.1998). An "uncured" deceptive act is defined as a

'deceptive act ... with respect to which a consumer who has been damaged by such act has given notice to the supplier,' but the supplier either fails to offer to cure within thirty days or does offer to cure but fails to cure within a reasonable time after the consumer accepts the offer.

*Id.* (quoting Ind.Code § 24–5–0.5–2(7)). An "incurable" deceptive act is defined as " 'a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead.' " *Id.* (quoting Ind.Code § 24–5–0.5–2(8)). It directly follows that intent to defraud or mislead is a required element of an "incurable" deceptive act, although it is not required for other deceptive acts. *Id.* at 67, 68 ("We hold that intent on the part of the violator is required under the Act for 'incurable' deceptive acts."); *see also* Ind.Code § 24–5–0.5–3(a) (listing acts constituting deceptive practices).

For claims of fraud or mistake, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). To meet this standard, a plaintiff must allege "the who, what, where, when, and how" of the fraud claim. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir.2007). Under the IDCSA, "where a movant ... '[does] not distinguish between its allegations of 'deceptive acts' and 'incurable deceptive acts' ... the entire complaint must be judged by Rule [9(b) ] standards ." *SMC Corp. v. Peoplesoft USA Inc.*, No. 1:00–CV–01095, 2004 WL 2538641, at *4 (S.D.Ind. Oct.12, 2004) (quoting *McKinney*, 693 N.E.2d at 73);[4] *Hofmann v. Abbott Labs., Inc.*, No. 01 C 1313, 2001 WL 1558299, at *4 (N.D.Ill.Dec.5, 2001) (citing *McKinney*, 693 N.E.2d at 71–72). In his Amended Complaint, Young does not specifically identify whether he is alleging "uncured" or "incurable" deceptive acts under the IDCSA, nor does he allege any facts supporting a claim of an "uncured" deceptive act. Accordingly, because the basis for Young's IDCSA claim is plainly fraud, he must meet the pleading requirements of Rule 9(b).

*7 In Counts III and IV brought under the IDCSA, Young has not pled any facts indicating "intent" on the part of Harris, alleging only misrepresentations made to Young by Harbor Honda and its employees. In the last numbered paragraph of each count, Young summarily alleges that Harris willfully failed to comply with the IDCSA when it deceptively and fraudulently requested and acquired Young's credit report without authorization and deceptively and fraudulently misrepresented to Young that the lowest available APR was through Honda Financial, respectively. However, in Count III, Young alleges that "as a consequent and proximate result of Defendant Harbor's misrepresentations through Defendants McDermott and VanHouten, Defendant Harris requested and obtained a copy of Plaintiff's credit report." Am. Compl. ¶ 49. In Count IV, Young provides only statements made by Harbor employees to Young regarding the lowest available interest rate. *See id.* ¶¶ 61–72. Because Young has not identified any

deceptive act engaged in specifically by Harris, he has failed to met the factual particularity requirement of Rule 9(b).

Nor can Young meet the heightened pleading standard by relying on his allegations in Counts III and IV of an agency relationship to attribute the actions of employees of Harbor Honda to Harris. The Seventh Circuit has held that, although agency may be established in a number of ways, when the same circumstances are relied upon to establish both the alleged fraud and the agency relationship, the heightened standard of pleading in Rule 9(b) applies not only to the underlying fraud claim but also to the issue of agency. *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir.1999). In Counts III and IV, Young alleges that Harbor Honda and Harris "are parties to a joint agreement whereby Harbor submits consumer information to Harris so that Harris may purchase tentative loan agreements or retail installment contracts that Harbor has arranged with consumers;" that pursuant to that agreement, Harbor Honda submitted one or both of the credit applications to Harris and Harris requested and acquired Young's consumer credit information; that "there also exists an informal agency relationship between [Harbor Honda] and Harris wherein [Harbor Honda] submits credit applications it receives from consumers to Harris to purchase tentative loan agreements or retail installment contracts;" and that Harris and Harbor each have control over the other based on these transactions. *See* Am. Complt., ¶¶ 51–53, 56, 57, 73, 74, 77, 78. Young's reliance on the same circumstances to establish both the agency relationship and the fraud under the IDCSA is fatal.

In his Response Brief, Young argues both apparent and inherent agency but has not alleged facts in support of either to survive the motion to dismiss. Apparent authority "exists where the actions of the principal give[ ] a third party ... the reasonable impression that the agent has the authority to take the action on behalf of the principal" and requires that the principal manifest to the third party its intent to give the agent authority. *Assocs. of Fin. Servs. Co. v. Bowman, Heintz, Boscia & Vician, P.C.*, No. IP 99–1725–C–M/S, 2004 WL 826088, at *18 (S.D.Ind. Mar.31, 2008) (applying Indiana agency and contract law) (citing *Carr v. Runyan*, 89 F.3d 327, 331, 331–32 (7th Cir.1996); *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind.2000)). Young cannot allege that apparent agency exists because Young was not aware of Harris when he filled out the financial application,[5] and, therefore, Harris could not have given Young a reasonable impression that Harbor or its employees had authority as an agent. Inherent authority arises from an already existing agency relationship and is described as "the power held by an agent, the exercise of which [is] effective to subject the principal to liability in transactions in which the agent has neither authority nor apparent authority, but in which the agent derives his power wholly from his relation with the principal." *Id.* at *19 (quoting Restatement (Second) of Agency § 161 (1958), *adopted by Menard,* 726 N.E.2d at 1210–13). Young cannot allege inherent authority because he has not met the heightened pleading standard for alleging an existing agency relationship. Because Young has not sufficiently pled agency, alleged misrepresentations by Harbor employees do not constitute misrepresentations by Harris.

*8 Morever, even if Young had met the heightened pleading standard for alleging an agency relationship in the context of a claim of fraud, courts have almost universally found that auto dealers are not agents of auto financing companies despite various contacts between the dealers and the financing companies. *See Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 93 (M.D.Tenn.2004) (citing *Pescia v. Auburn Ford–Lincoln Mercury, Inc.*, 68 F.Supp.2d 1269, 1282–83 (M.D.Ala.1999) (financing company dictated terms of an acceptable assignment and instructed the dealer to achieve a "hard close"); *Mardis v. Ford Motor Credit Co.*, 642 So.2d 701, 704 (Ala.1994) (financing company supplied contract forms to dealer and could approve or disapprove the application); *Chrysler Credit Corp. v. Barnes*, 126 Ga.App. 444, 191 S.E.2d 121, 127–28 (Ga.1972) (financing company provided contract forms, refused to accept assignment absent approval of buyer's credit and properly filled out contract, and had a general agreement with the dealer as to the financing of cars); *Dunn v. Midland Loan Fin. Corp.*, 206 Minn. 550, 289 N.W. 411, 415 (Minn.1939) (financing company had a course of dealing with dealer for successive purchases).

Accordingly, because Young has not alleged any misrepresentation or deceptive act by Harris or its employees, the Court recommends that Judge Van Bokkelen dismiss Young's IDCSA claims against Harris in Counts III and IV of the Amended Complaint.

2. *Common Law Fraud*

In Counts V and VI, Young alleges common law fraud against Harris predicated on the acts of Harbor Honda's employees McDermott and VanHouten. In the Motion to Dismiss, Harris argues that Young fails to allege any material misrepresentations by Harris, that Young has not pled with sufficient particularity under Rule 9(b) either the underlying fraud claim or the predicated agency relationship, and that Young has not alleged actual damages necessary to establish a common law fraud claim.

In Indiana, the elements of common law fraud are: (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) which caused the claimant to rely upon the misrepresentation to the claimant's detriment. *See Siegel v. Williams,* 818 N.E.2d 510, 515 (Ind.Ct.App.2004). As discussed above in the context of the IDCSA, Rule 9(b) requires that a claim of fraud state with particularity the circumstances constituting fraud, *see* Fed.R.Civ.P. 9(b), and to meet this standard, a plaintiff must allege "the who, what, where, when, and how" of the fraud claim, *Borsellino,* 477 F.3d at 507. When a fraud claim is predicated on the existence of an agency relationship, agency must be pled with the same factual particularity as the underlying fraud claim. *Lachmund,* 191 F.3d at 783.

As with the statutory fraud claims, Young has failed to allege in support of his common law fraud claims that Harris or an agent of Harris made a material misrepresentation to Young. Rather, in the Amended Complaint and in his Response Brief, Young repeats allegations that, because Harbor Honda employees misrepresented the financing rate presented to him, he was induced into accepting a higher APR, his credit score decreased, and he incurred litigation expenses. As discussed above in Part B.1, Young has not pled facts sufficient to establish an agency relationship, and he has made no specific allegations of agency other than those that form the basis of the allegations of fraud. Because Young fails to identify any actual misrepresentations made by Harris to Young, the Court recommends that Judge Van Bokkelen dismiss the claims of common law fraud against Harris in Counts V and VI of the Amended Complaint.

*3. Breach of Contract*
 *9 Count VII of the Amended Complaint alleges breach of contract based on Harbor Honda's breach of its contract with Young. Harris argues that, because Young has failed to allege the existence of a contract between Young and Harris, Young's breach of contract claim must be dismissed. In his Response, Young again alleges that Harbor Honda employees were agents of Harris.

The existence of a contract is an essential element for a breach of contract claim. *Fairfield Dev., Inc. v. Georgetown Woods Sr. Apartments Ltd. P'ship,* 768 N.E.2d 463, 473 (Ind.Ct.App.2002) (listing the essential elements of a breach of contract action as the existence of a contract, the defendant's breach thereof, and damages). In the instant action, Young alleges that "Harbor Honda unduly breached its contract with Plaintiff Young," Am. Compl. ¶ 142, and that Harbor Honda's breach caused Harris to run an unauthorized credit check on Young. Young does not allege the existence of a contract between himself and Harris and, thus, has failed to state a claim for breach of contract against Harris. Young cannot survive dismissal by baldly asserting in his Response Brief an agency relationship between Honda Harbor and Harris without alleging any facts in support of the relationship. There is no allegation in Count VII of an agency relationship between Honda Harbor and Harris or that Honda Harbor entered into a contract between Young and Harris. As set forth in Part B.1 above, even without the heightened pleading standard for agency related to fraud claims, Young has not pled any facts supporting an agency relationship between Honda Harbor and Harris, alleging at most facts in support of a contractual relationship between Honda Harbor and Harris. Therefore, the Court recommends that the District Court dismiss the breach of contract claim in Count VII against Harris.

*4. Invasion of Privacy*
In Count VIII, Young alleges that Harris' requesting and obtaining Young's credit report against his wishes was an intentional intrusion upon his solitude or seclusion and that the unauthorized acquisition was highly offensive. Seeking dismissal of this claim, Harris argues that the facts alleged in the amended complaint cannot state a claim for invasion of privacy.[6]

Indiana law defines the tort of invasion of privacy as encompassing four distinct injuries: (1) intrusion upon seclusion, (2) appropriation of likeness, (3) public disclosure of private facts, and (4) false-light publicity. *Doe v. Methodist Hosp.,* 690 N.E.2d 681, 684 (Ind.1997).

Indiana courts have narrowly construed the intrusion upon seclusion branch of invasion of privacy invoked by Young. *Creel v. I.C.E. & Assocs., Inc.,* 771 N.E.2d 1276, 1280 (Ind.Ct.App.2002). The Indiana Supreme Court has held that a plaintiff must demonstrate an "intrusion upon the plaintiff's *physical* solitude or seclusion as by invading his home or conducting an illegal search." *Cullison v. Medley,* 570 N.E.2d 27, 31 (Ind.1991) (citing W. Page Keeton et al., Prosser and Keeton on Torts, § 117 (5th ed.1984)) (emphasis added); *see also Creel,* 771 N.E.2d at 1280. Indiana courts have not found intrusion without invasion of the plaintiff's physical space or without physical contact. *Creel,* 771 N.E.2d at 1280 (citing cases). The only factual allegation supporting Young's claim is that Harris requested and obtained Young's credit report against his wishes. Indiana law simply does not support a claim for invasion of privacy by intrusion upon seclusion based on these facts given that there is no allegation of physical contact or of an invasion of Young's physical space. Therefore, the Court recommends that Judge Van Bokkelen dismiss the invasion of privacy claim against Harris in Count VIII.

**CONCLUSION**

\*10 Based on the foregoing, the Court **RECOMMENDS** that Judge Van Bokkelen **GRANT** Harris N.A.'s Motion to Dismiss Young's Amended Complaint Pursuant to Rule 12(b)(6) [DE 64], recommending that he dismiss the Amended Complaint as to Defendant Harris N.A.

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(B). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have ten (10) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.,* 199 F.3d 902, 904 (7th Cir.1999); *Hunger v. Leininger,* 15 F.3d 664, 668 (7th Cir.1994); *The Provident Bank v. Manor Steel Corp.,* 882 F.2d 258, 260–261 (7th Cir.1989); *Lebovitz v. Miller,* 856 F.2d 902, 905 n. 2 (7th Cir.1988).

SO ORDERED this 18th day of December, 2008.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 187793

## Footnotes

1. Young argues that he did not initiate the transaction and cites the provision of the FCRA that provides that, when furnishing reports in connection with credit transactions that are *not* initiated by the consumer, reports may only be issued if "the consumer authorizes the agency to provide such report to such person; or ... the transaction consists of a firm offer of credit ...." 15 U.S.C. § 1681b(c)(1). However, as in *Stergiopoulos,* Young initiated the credit transaction at Harbor Honda by requesting financing. *See* 427 F.3d at 1046–47.

2. Although Young also orally communicated to both McDermott and VanHouten that only Honda Financial was authorized to request his credit report, there is no allegation in the Amended Complaint that McDermott or VanHouten transmitted this oral instruction to Harris or that Harris was aware of these oral instructions. In contrast, the Amended Complaint alleges that Harris received the credit applications with the written instructions.

3. In Counts I and II, Young also alleges damages against Harbor Honda in paragraphs 21 and 27.

4. Although the court in *McKinney* was applying Indiana Trial Rule 9(B), Indiana Trial Rule 9(B) and Federal Rule of Civil Procedure 9(b) are substantively identical.

5   In his response brief, Young states that he *"did not know"* that McDermott and VanHouten were making such misrepresentations on behalf of Harris." Pl. Br., p. 8 (emphasis added).

6   Harris also asserts that, because its review of Young's credit report was for a permissible purpose, Young's invasion of privacy claim is preempted by the FCRA. The Court need not reach Harris' preemption argument given that Young cannot state a claim for state invasion of privacy.

**End of Document**                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.