LINDABURY, MCCORMICK, ESTABROOK & COOPER
A Professional Corporation
53 Cardinal Drive
P.O. Box 2369
Westfield, N.J. 07091
(908) 233-6800
SLF - 0274
Attorneys For Defendant Nissan Motor Acceptance Corporation
Improperly plead as Nissan-Infiniti LT

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW RITZ and MICHAEL RITZ | : Civil Action No. 3:20-cv-13509 |
| Plaintiffs, | : |
| vs. | : |
| NISSAN-INFINITI LT; TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC; and EXPERIAN INFORMATION SOLUTIONS, INC. | : |
| Defendants. | : |

## DEFENDANT NISSAN MOTOR ACCEPTANCE CORPORATION'S
## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT.

On the Brief:

    Steven L. Fox, Esq.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................... 1

   I.  NMAC's Reporting Was Accurate .................................................. 4

     A. Plaintiffs' Arguments Regarding the Appointment and Odometer
       Statement Are Red  Herrings........................................................ 4

     B. Plaintiffs' Argument Turns on Incorrect Interpretations of "Possession"
       and "Return." ................................................................................ 5

   II.  Plaintiffs' Are Disputing the Legal Accuracy, not the Factual Accuracy, of
      the Reporting which is Fatal to their Claim. ................................... 8

CONCLUSION ................................................................................................... 155

3483101v1

# TABLE OF AUTHORITIES

## Cases

Alston v. Branch Banking & Trust
2016 WL 4521651 (D. Md. 2016)........................................................................ 14

Auer v. Robbins
519 U.S. 452 (1997) ............................................................................................. 2

Batterman v. BR Carroll Glenridge
829 Fed. Appx. 478 (11th Cir. 2020) ............................................................. 10, 14

Boggio v. USAA FSB
696 F.3d 611 (6th Cir. 2012)......................................................................... 12, 13

Bowling v. U.S. Bank
963 F.3d 1030 (11th Cir. 2020).......................................................................... 9

Chiang v. Verizon New England
595 F.3d 26 (1st Cir. 2020) ...................................................................... 10, 13, 14

DeAndrade v. TransUnion
523 F.3d 61 (1st Cir. 2008) ............................................................................... 10

Denan v. TransUnion
959 F.3d 290 (7th Cir. 2020)......................................................................... 12, 13

Esperance v. Diamond Resorts
2022 WL 1718039 (D.N.J. 2022).................................................................... 10, 14

Gross v. CitiMortgage
33 F.4th 1246 (9th Cir. 2022)......................................................................... 11, 12

Hinkle v. Midland Credit Mgm't
827 F.3d 1295 (11th Cir. 2016).......................................................................... 15

Holland v. Chase Bank
475 F.Supp.3d 272 (S.D.N.Y. 2020)................................................................... 10

Horsch v. Wells Fargo
94 F. Supp. 3d 665 (E.D. Pa. 2015) ................................................................... 14

3483101v1

Hrebal v. Nationstar
385 F.Supp.3d 849 (D. Minn. 2019) ....................................................... 15

Hunt v. JPMorgan Chase
770 Fed. App'x 452 (11th Cir. 2019)................................................. 10, 13

Johnson v. Sheffield
2020 WL 3546900 (E.D. Ark. 2020) ....................................................... 10

Johnson v. TransUnion
2012 WL 983793 (N.D. Ill. 2012) aff'd, 524 Fed. Appx. 268 (7th Cir. 2013)....... 15

Kisor v. Wilkie
193 S.Ct. 2400 (2019) ............................................................................ 2

Lewis v. Experian
2018 WL 1989449 (C.D. Cal. 2018)...................................................... 14

Mason v. Chase Home Finance
2014 WL 37219 (D.N.J. 2014)............................................................... 15

Milgram v. Chase Bank
2022 WL 5240547 (11th Cir. 2022)....................................................... 12

Mohnkern v. Equifax
2021 WL 5239902 (W.D.N.Y. 2021) ..................................................... 11

Saunders v. Branch Banking & Trust
526 F.3d 142 (4th Cir. 2008)................................................................. 13

Wilson v. SunTrust Bank, Inc.
533 F.Supp.3d 1363 (S.D. Ga. 2021)...................................................... 8

**Statutes**

§ 1681s-2(b) ........................................................................................ 10
15 U.S.C. § 1681i(b)-(c)........................................................................ 10

**Other Authorities**

115 Cong. Rec. 2410 (1969) (statement of Senator Proxmire)................................ 9

3483101v1

## INTRODUCTION

The simple undisputed fact in this case is that the Lease Agreement includes a provision related to returning the Vehicle, and there is a dispute over whether Plaintiffs actions[1] constituted an abandonment of the Vehicle or complied with the requirements of the Lease Agreement. There is no dispute that if NMAC's legal interpretation is correct, an additional monthly payment was owed and if Plaintiffs' legal interpretation is correct, an additional monthly payment was not owed. The Parties also agree that Plaintiffs did not make the additional monthly payment. Thus, if it was contractually owed, then they were unequivocally 30 days past due.

Therefore, the only thing in dispute is whether the monthly payment was contractually owed, or as Plaintiffs' Counsel puts it: "the issue is, did Nissan have the contractual right to charge the Ritzes after August 9th, 2019." This is a legal issue that needs to first be adjudicated by a court of law before it can be resolved by a furnisher, it is not an appropriate target of an FCRA credit reporting dispute.

Rather, the FCRA is intended to resolve factual disputes such as whether and when a payment was made.[2] The FCRA dispute process is not intended to resolve

---

[1] Leaving the Vehicle at the non-party dealership after arriving unannounced and without an appointment, despite the dealership's objections, refusal to accept the Vehicle, and assertions that the Vehicle would be towed if left by Plaintiffs.

[2] If the monthly payment was due September 1st, and Plaintiffs made the payment on September 15th, but were being reported as 30-days past due, that would be an appropriate subject of dispute - the reporting would be factually inaccurate.

1

contractual disputes as to whether a vehicle was properly returned and whether the possession was surrendered sufficient to legally cut off the payment obligation.

Since the dispute is legal, Plaintiffs rightfully (but erroneously) spend much of their briefing attempting to convince this Court that it does not matter whether it is a legal dispute or a factual dispute. Plaintiffs acknowledge this distinction applies in FCRA cases, but take the untenable position that it should only be applied to credit reporting agencies ("CRAs"), not furnishers like NMAC.

To advance this argument Plaintiffs erroneously claim Circuit Court opinions expressly disclaim its application to furnishers when those opinions do nothing of the sort; asks this Court to ignore the multitude of orders and opinions supporting NMAC's position because the issue was not "meaningfully" examining or case law was applied "without analysis;" and refer to a non-existent "growing jurisprudential consensus." Plaintiffs also overstate the CFPB's position in an amicus brief, and grossly overstate its precedential impact - which is none.[3] The weight of authority,

---

[3] Plaintiffs contend that legal interpretations of a <u>federal statute</u> in an amicus brief filed by a regulatory agency are entitled to substantial respect, if not outright deference, and in support cite to an Opinion that only gave qualified deference to an agencies interpretation of its own policy, not the statute itself. *See* Doc. 67 at 29 citing *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997). *Auer* merely states: "Because the salary-basis test is a <u>creature of the Secretary's own regulations</u>, his interpretation of it is, under our jurisprudence, controlling unless 'plainly erroneous or inconsistent with the regulation." *Id*. (emphasis added). Moreover, the Supreme Court explained at length the significant limitations of *Auer* deference, which includes: "a court should not afford *Auer* deference unless the <u>regulation</u> is genuinely ambiguous," among other things. *Kisor v. Wilkie*, 193 S.Ct. 2400, 2415 (2019).

2

the history and purpose of the FCRA, and logic all reject Plaintiffs' position.

Plaintiffs then contend, without record citation, that there is evidence of willfulness because NMAC "knew" certain information[4] (much of which is in dispute) and did not remove the 30 day delinquency fast enough despite internal requests to do so. However, whether customer service chooses to resolve issues favorably to a consumer does not address whether information was inaccurate[5] and whether NMAC knew it was violating the FCRA - it was not and it did not. Then, without meaningful citation, Plaintiffs state that they experienced actual damages.[6]

For purposes of this Reply, NMAC will primarily focus on the first two issues: (1) whether the reporting was accurate; and (2) whether the dispute at issue was a

---

[4] i.e. the vehicle was returned on August 9th - which is in dispute; and Plaintiffs excuse for not signing an odometer statement.

[5] A customer service representative requesting adjustment to the reporting does not affect its accuracy any more than a customer service representative at a bank agreeing to waive a late charge is admitting it was an improper charge to begin with.

[6] Since Plaintiffs do not meaningfully dispute this issue and due to the limiting briefing space, NMAC rests on its prior briefing and reiterates the speculative nature of the purported damages (i.e. someone at Staples *may* have read the disputes that they brought there to be copied) and lack of evidentiary support for their damages claims and whether any causal relationship to the alleged FCRA violation. See ECF 66-12, 34:6 to 36:17; ECF 66-15, 23:4 to 25:17. For example, Plaintiffs state they "suffered considerable damages including credit denial" despite admitting no such denial exists. See ECF 67 at 9. Michael Ritz agreed "Since August of 2019, Michael Ritz was not denied any sort of credit opportunities he wanted to pursue"; and Andrew Ritz agreed that he was "never denied any credit card," and "never applied, nor was denied any loan or mortgage after August 2019." (See ECF 67-1 at ¶¶ 38-43; 52-55.) Yet, they somehow argue the contrary in their brief. See ECF 67 at 9.

legal dispute that is not actionable under the FCRA.[7] As will become apparent, Plaintiffs' arguments are predicated on loose use of language and sleight of hand, and their arguments and authority frequently do not actually support their position.

## I.  NMAC's Reporting Was Accurate

NMAC's reporting was accurate because Plaintiffs failed to comply with their obligations related to returning the Vehicle pursuant to Paragraph 12 of the Lease Agreement, and therefore NMAC was permitted to charge an additional month's rent which indisputably was never paid. Plaintiffs' arguments to the contrary are unavailing and rely upon ambiguous use of terms such as "return" and "possession" which can carry more than one meaning, and cherry-picked quotations that lack necessary context and arise from deponents that work in the areas of collections, customer service, and credit reporting - not leasing experts.[8]

### A.  Plaintiffs' Arguments Regarding the Appointment and Odometer Statement Are Red Herrings.

Plaintiffs make much ado about there being no "contractual or legal right to charge an additional monthly payment for failing to schedule a lease end

---

[7] In doing so, NMAC is not abandoning any of its previous arguments not re-addressed herein - all of which Plaintiffs failed to rebut. This instead merely reflects NMAC's decision on where to allot its limited briefing space.

[8] (See Certification of Steven L. Fox, **Exhibit "A",** Edmond Dep. at 23:1-6, explaining her job was to "analyze whatever facts have been presented to me . . . and then forward that on to the specific department in Account Services to rereview it, fully investigate it, and handle it as they see fit after their investigation.").

3483101v1

appointment or for failing to sign the odometer statement."[9] Plaintiffs even highlight that NMAC's corporate representative failing to identify such a provision.[10] However, Plaintiffs omit that interpreting the Lease Agreement was beyond the scope of the deposition which was intended to relate to the procedures for processing disputes and other similar items.[11] In fact, the deponent testified "I'm not a leasing expert" during questioning about her interpretation of the Lease Agreement.[12]

Further, the issue is not whether there are contractual provisions permitting monthly payments to be charged for these acts in isolation - NMAC has never suggested such language exists. Instead, and as Plaintiffs admit, the Lease Agreement ECF permits additional monthly payments to be charge "if Plaintiffs keep possession" or "failed to return" the Vehicle. (See ECF 67 at 11.) The question is whether either of those two events occurred, and the answer is yes.

### B.    Plaintiffs' Argument Turns on Incorrect Interpretations of "Possession" and "Return."

Plaintiffs contend that "[i]t is undisputed that Nissan knew at all times that Plaintiffs returned the vehicle on August 9th." (See Id.) Plaintiffs repeatedly point to comments by NMAC related to the September 24th letter from the dealership as

---

[9] See ECF 67 at 9-19. However, Plaintiffs' do not appear to dispute that signing the odometer statement was required by law *Id*. at 14.
[10] See ECF 67 at 18.
[11] See ECF 56 at 2; Certification of Steven L. Fox, **Exhibit "B"**, Deposition Notice.
[12] See ECF 66-3, Exhibit "H", 65:22-25.

3483101v1

evidence NMAC knew the vehicle was returned on August 9th. (See, e.g. Id. at 14.) However, the letter itself confirms the vehicle was not returned on that date and Plaintiffs did not surrender possession. In the letter, the dealership states:

"The vehicle was dropped off to our dealership on 8.9.19. The Customer wanted it to be grounded and turned in but didn't want to follow procedure **and abandoned the Vehicle** at 4041 RT 9 in Freehold NJ."[13] It is of no moment whether NMAC was willing to accept otherwise for customer service purposes.

Based upon this letter, it is clear Plaintiffs did not have <u>physical</u> possession of the Vehicle and a layperson could even interpret this as some form of "return." Plaintiffs try to take advantage of this, pointing to deposition testimony from laypersons attempting to address whether Plaintiffs kept possession or returned the Vehicle.[14] However, the issue is what these terms mean in the contract, not what a layperson may think without the necessary context.

Simply put, possession can have a number of meanings. There is no dispute that Plaintiffs lacked physical possession over the Vehicle, but that also holds true for every individual that leaves their car in a parking lot. There is no reasonable interpretation of the Lease Agreement that would support an argument that NMAC

---

[13] (See ECF 67-13.) (Emphasis Added).

[14] NMAC's corporate representative directly addressed this point when she explained that Plaintiffs were not in physical possession of the Vehicle but they were in possession after August 9, 2019. (See Certification of Steven L. Fox, **Exhibit "C"**, Deborah Donley Deposition Transcript, 112:20-113:5.)

3483101v1

was barred from charging monthly payments when a vehicle is left at the supermarket or in the consumer's driveway. Here, there is no dispute that the dealership refused to accept the Vehicle, told Plaintiffs the Vehicle would be towed off the lot, considered the Vehicle abandoned (and told NMAC precisely that).[15]

Similarly, interpreting 'return' requires context. If a consumer purchases an item and later brings it back to the store without the box or receipt, must the store deem the item 'returned' and refund the purchase, or must the consumer also follow the procedures for returning the item to effectuate a completed return?[16]

Here, Plaintiffs admit that he was informed "the dealership would not be returning the car for Ritz." (See ECF 67-1 at ¶ 13.) Moreover, the Lease Agreement has a section titled "Vehicle Return" which unequivocally requires an odometer statement to be completed. (See ECF 66-9, page 3, ¶ 12). Plaintiffs' position that the Vehicle was returned because it was physically brought to the dealership, without regard to their obligations under the Lease Agreement addressing how a Vehicle must be returned, including that the odometer statement be signed, is untenable.[17]

Here, Plaintiffs' abandonment of the Vehicle at the dealership and failure to

---

[15] (See ECF 67-1 at ¶¶ 12-14, 19; ECF 67-13.)

[16] What about if the consumer simply brings the item back to the store - does the physical transportation to the original location suffice?

[17] Just as a customer bringing a product to a retailer without the original packaging or receipt cannot expect to have the item deemed 'returned,' neither can Plaintiffs when they fail to comply with the contractual section titled "Vehicle Return."

sign the odometer statement as required by the express terms of the Lease Agreement governing "Vehicle Return" triggered NMAC's contractual right to charge an additional month's rent - Plaintiffs' kept possession of the Vehicle even if not physical possession, and Plaintiffs' failed to return the Vehicle.

## II.    Plaintiffs' Are Disputing the Legal Accuracy, not the Factual Accuracy, of the Reporting which is Fatal to their Claim.

Plaintiffs disingenuously argue that "[t]here is no contractual interpretation problem to be resolved," but their position requires this Court to accept their interpretation of the term "possession," the term "return," and the rights and obligations that arise from Paragraph 12 of the Lease Agreement which governs return of the Vehicle. (See ECF 67 at 17.) The question here is not whether the Parties agree with what the contract says - they clearly do, but rather what that language means. Plaintiffs' attempt to point to lay witness interpretations of these terms out of context and by omitting subsequent clarification that demonstrates "possession" and "return" can have more than one meaning and context is critical.

There is a clear disagreement in this case as to what is required to cut off the contractual right to charge monthly payments, and that is the heart of this credit reporting dispute. Since this case turns on what the contract permits, it is a legal dispute that is not appropriate for a FCRA claim.[18]

---

[18] *See Wilson v. SunTrust Bank, Inc.*, 533 F.Supp.3d 1363 (S.D. Ga. 2021) (granting defendant's motion for summary judgment because "[t]he dispute at the heart of this

3483101v1

Plaintiffs' argument that the basis for this distinction only applies to CRAs, not furnishers, is misguided. The section applicable to furnishers uses the same "inaccurate" language as the section applicable to CRAs and therefore should be interpreted the same.[19] Moreover, this distinction is incompatible with the statutory structure. As Plaintiffs appear to concede, CRAs are not required to resolve legal disputes.[20] Yet, Plaintiffs also concede that the obligations on furnishers under §1681s-2(b) is intended "to enable the CRA to comply with its own section 1681i duties." (See *Id*. at 33.) In essence, Plaintiffs' position is that although CRAs do not have a duty to investigate or correct legal disputes, in order to aid CRAs in this non-existent obligation, furnishers must resolve legal disputes. (See *Id*. at 22, 33.) This is internally inconsistent and is inconsistent with the purpose of the statute.[21]

---

action is thus one of interpretation of the Contract: was Plaintiff contractually obligated to continue making monthly payments on his loan after his insurance company paid two lump sums to Defendant? The answer to this question is clearly one of legal interpretation and not one of factual accuracy.").

[19] *See Bowling v. U.S. Bank*, 963 F.3d 1030, 1038 (11th Cir. 2020) ("identical words and phrases within the same statute should normally be given the same meaning."). Plaintiffs concede the similarity. (See ECF 67 at 30 ("Congress . . . duplicated this language virtually verbatim . . . when it added the furnisher responsibilities").

[20] (ECF 67 at 22-34 - the logic applying this to CRAs does not extend to furnishers).
[21] *See* 115 Cong. Rec. 2410 (1969) (statement of Senator Proxmire). Senator Proxmire, the sponsoring Senator, explained the FCRA was designed to target confusion over individuals with similar names; biased information; malicious gossip; computer errors; and incomplete information. *Id*. at 2411. For biased information, he explained that the consumer should have the opportunity to tell his or her "side of the story" to explain nonpayments. *Id*. Consumers are permitted to include a statement explaining their dispute, and CRAs are required to clearly note that the information is disputed and relay the consumer's statement. 15 U.S.C. §

Moreover, "courts have routinely held that furnishers are not required to investigate the legal validity of the underlying debts they report." *Esperance v. Diamond Resorts,* 2022 WL 1718039, *6 (D.N.J. 2022); see also *Hunt v. JPMorgan Chase*, 770 Fed. App'x 452 (11th Cir. 2019)[22] (affirming order granting furnisher's motion to dismiss: "even assuming JPMB furnished information that turned out to be legally incorrect under some future ruling, JPMC's legal error was an insufficient basis for a claim under the FCRA"); *Chiang v. Verizon New England*, 595 F.3d 26 (1st Cir. 2020) (in a suit against a furnisher "a plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions").[23]

---

1681i(b)-(c); *DeAndrade v. TransUnion*, 523 F.3d 61, 69 (1st Cir. 2008) (rejecting FCRA claim based upon legal dispute and stating "the FCRA provides an alternative remedy for consumers . . . they may submit a statement detailing their version of the dispute to be included in their credit report." Noticeably absent is any statement that the consumer could alternatively bring a 1681s-2(b) claim against the furnisher). This ensures anyone that reviews the credit report can determine the weight to place on the disputed debt by considering the disputed legal position.

[22] This holding was repeated in *Batterman v. BR Carroll Glenridge*, 829 Fed. Appx. 478 (11th Cir. 2020) where it affirmed the granting of a furnisher/debt collector (IQ Data) and CRA's successful motion for judgment on the pleadings because the dispute was a "contractual dispute" that "required resolution by a court of law." The issue was whether it was inaccurate to report a liquidated damages amount where there was a dispute over proper termination of the lease. *Id.* at 479-81.

[23] *See also Holland v. Chase Bank*, 475 F.Supp.3d 272 (S.D.N.Y. 2020) ("[t]he Second Circuit has not squarely addressed whether a legal dispute as to the validity of a debt . . . can suffice to show a 'factual inaccuracy' under § 1681s-2(b). But, the federal courts of appeals and district courts that have addressed the question are in widespread agreement that a plaintiff's legal challenge to the validity of a debt is alone insufficient to make a report of that debt factually inaccurate."); *Johnson v. Sheffield*, 2020 WL 3546900 (E.D. Ark. 2020).

10

The Western District of New York recently addressed this issue in the context of a dispute centered around the lessors argument that she was relieved of any payment obligation based upon a perceived breach by the landlord. Agreeing with *Hunt* and *Chiang,* the Court found that the claim failed against the furnisher because it involved a legal inaccuracy, explaining:[24]

> "The Second Circuit has not addressed whether an alleged legal dispute regarding the validity or enforceability of an underlying debt renders that debt 'inaccurate' for purposes of a section 1681s-2(b) claim against a furnisher. **Chiang, however, appears to be the leading case on this issue** . . . In addition, numerous courts have applied *Chiang* when addressing this issue . . . **And while *Chiang* has not been endorsed universally . . . it certainly appears to represent the prevailing view when courts deal with the type of claim asserted against furnishers like plaintiffs' here.**"

Contrary to Plaintiffs' bald assertions, cases that find otherwise are the outlier and are inconsistent with the purpose of the FCRA. Further, in the limited instances cited by Plaintiffs where Courts have found that furnishers need to resolve legal disputes, it has arisen in the unique situation where the furnisher's legal position is patently erroneous and effectively frivolous and sanctionable if argued in Court.

In *Gross* - the only Circuit Court opinion that remotely supports Plaintiffs - the 'legal dispute' related to whether a post-foreclosure mortgage deficiency was owed despite Arizona having an anti-deficiency statute that, based upon well-established Arizona Supreme Court precedent, unequivocally abolished the debt,

---

[24] *Mohnkern v. Equifax*, 2021 WL 5239902, *6 (W.D.N.Y. 2021).

making it "patently incorrect" to argue otherwise.[25]

Plaintiffs use sleight of hand to suggest other Circuit Court opinions support their position. First, they assert *Denan* "reaffirmed" the duty of furnishers to resolve legal disputes.[26] However, *Denan* involved a CRA, not a furnisher. *Id*. Moreover, the language quoted by Plaintiffs comes from *dicta* where the Court was addressing definitions in the Code of Federal Regulations, not § 1681s-2(b). Plaintiffs also ignore *Denan*'s statement: "[t]he correct way to resolve legal defenses to [the] loans was in a lawsuit against those lenders. . . Because no formal adjudication discharged plaintiffs' debts, no reasonable procedure could have uncovered an inaccuracy."[27]

Plaintiffs cite *Boggio* to assert the Sixth Circuit agreed with the Seventh Circuit.[28] Instead, the Court merely reversed summary judgment, finding that "the

---

[25] See *Gross v. CitiMortgage,* 33 F.4th 1246, 1252. (9th Cir. 2022). In reaching its conclusion, *Gross* acknowledged the CFPB's argument that the "FCRA does not categorically exempt legal issues" for furnishers." *Id*. 1253. However, the rationale for prohibiting a <u>categorical</u> exemption was that it serves the purpose of preventing a furnisher from "evad[ing] their investigation obligation" by construing a dispute as legal even if no true legal dispute exists. *See generally id*. What it does not mean, and cannot mean, is that credit investigators need to be licensed attorneys capable of researching and resolving non-frivolous legal arguments favorably for the consumer or risk damages and attorneys' fees if a court subsequently finds against the furnisher's non-frivolous position, regardless of how the contract allocates that risk. *See Milgram v. Chase Bank*, 2022 WL 5240547 (11th Cir. 2022) (brief of amicus curiae Chamber of Commerce, et. al) for an excellent counterpoint to the CFPB's amicus brief and discussion of the legislative history, purpose and structure.

[26] (See ECF 67 at 24), citing *Denan v. TransUnion*, 959 F.3d 290 (7th Cir. 2020).

[27] *Id*. at 296.

[28] (See ECF 67 at 25.) citing *Boggio v. USAA FSB*, 696 F.3d 611 (6th Cir. 2012). Plaintiffs are presumably referencing their misinterpretation of *Denan* as the Seventh

evidence presented is not so one-sided as to mandate the [] investigation was reasonable as a matter of law." *Id*. at 619. Plaintiffs are effectively arguing the Sixth Circuit endorsed their position by not raising the issue *sua sponte*.

*Boggio* is one of many examples of cases relied upon by Plaintiffs that do not stand for the proposition for which it is used. In fact, despite the issue not even being addressed in *Boggio*, in the next paragraph Plaintiffs contend that "[i]n addition to the Sixth Circuit,[29] the Fourth Circuit expressly rejected this 'collateral attack' argument . . . when asserted against furnishers." However, neither Court did that. To support this 'express rejection' Plaintiffs cite *Saunders*, but there the Court addressed whether a furnisher was required to report an account as disputed by the consumer - there was no suggestion the furnisher was required to actually investigate or resolve that dispute, nor cease its reporting of the disputed information.[30]

After suggesting *Boggio* and *Saunders* expressly reject NMAC's position, which they clearly do not, Plaintiffs ask this Court to ignore the First Circuit's Opinion in *Chiang* (which the WDNY recently acknowledged was the "leading case on this issue") because the relevant analysis is in *dicta*, and to ignore the Eleventh Circuit's Opinion in *Hunt* because it found "[a] plaintiff must show a factual

---

Circuit opinion, despite the case preceding *Denan* by nearly a decade and the furnisher not challenging whether it had an obligation to resolve the dispute.

[29] *Boggio* is the only Sixth Circuit case cited and must be what is being referenced.

[30] See *Saunders v. Branch Banking & Trust*, 526 F.3d 142 (4th Cir. 2008)

13

inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher" without analysis.[31] Then, Plaintiffs ask this Court to discount every district court ruling within the First and Eleventh Circuits, as well as some within the Second Circuit.[32]

In an attempt to suggest Courts routinely reject NMAC's position, Plaintiffs cite a series of cases that largely deal with an unrelated issue - whether a dispute can be predicated upon a misleading omission rather than an affirmative factual inaccuracy.[33] These cases do not turn on conflicting interpretations of a contract or the application of law to fact, and often do not even analyze the issue.[34]

---

[31] See (ECF 67 at 26). Plaintiffs argument appears to be that the Eleventh Circuit flippantly reached this conclusion and blindly affirmed dismissal of the complaint. Plaintiffs' do not explain why the Eleventh Circuit reaffirmed this position in *Batterman* when it found in favor of the furnisher and CRA because the complaint "does not allege a factual inaccuracy." *Batterman*, 829 Fed. Appx. 478.

[32] (ECF 67 at 26). Notably, Plaintiffs do not even attempt to address *Esperance* except to say it is flawed because *Chiang* is flawed. (Id. at 34).

[33] *Chiang* states "just as in suits against CRAs, a plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions." *Chiang*, 595 F.3d 38. For a period of time, furnishers were citing *Chiang* for the proposition that absent a factual inaccuracy, no claim can exist. However, Plaintiffs' cases largely stand for the unremarkable proposition that technically accurate reporting with a material omission of fact can also be factually inaccurate. *See, e.g. Horsch v. Wells Fargo*, 94 F. Supp. 3d 665 (E.D. Pa. 2015) (finding *Chiang* required a "factual inaccuracy" but 3rd Circuit precedent held technically correct information can be inaccurate by omission, in this case omitting records of ongoing monthly payments).

[34] *See, e.g. Lewis v. Experian*, 2018 WL 1989449 (C.D. Cal. 2018) (merely finding that the *Carvalho* opinion does not bar claims related to legal disputes against furnishers, but does not address whether the distinction should apply, and instead finds no inaccuracy exists so the issue was moot)' *Alston v. Branch Banking & Trust*, 2016 WL 4521651 (D. Md. 2016) (there is no indication the Court was asked to

14

In a last-ditch effort to salvage the erroneous proposition, Plaintiffs argue NMAC should have blocked the reporting as unverifiable.[35] None of the cases cited by Plaintiffs suggest a legal dispute should be reported as unverifiable. Instead, *Hinkle*, for example, addresses whether a debt buyer that receives no account-level documentation can reasonably investigate a dispute related to the identity of the alleged debtor by exclusively relying upon its own records.[36] *Hinkle* is exclusively focused on whether facts can be verified, not legal propositions. *See generally id.*

**CONCLUSION:** For these reasons and those in the original motion, the Motion for Summary Judgment should be granted, and the case dismissed.

October 17, 2022                    By:   *s/ Steven L. Fox*

---

decide whether the furnisher needed to resolve a legal dispute, the Court merely addressed the furnisher's argument that it conducted an investigation); *Mason v. Chase Home Finance*, 2014 WL 37219 (D.N.J. 2014) (the issue was whether reporting a foreclosure action without noting that it was disputed or voluntarily dismissed was inaccurate - the issue was not factual vs. legal inaccuracy, but rather whether a material omission suffices); *Johnson v. TransUnion*, 2012 WL 983793 (N.D. Ill. 2012) aff'd, 524 Fed. Appx. 268 (7th Cir. 2013) (Plaintiffs correctly cite that the Court noted the consumer's real dispute was with the agency, but it did not say the consumer could resolve that dispute through FCRA litigation); *Hrebal v. Nationstar*, 385 F.Supp.3d 849 (D. Minn. 2019) (the issue was whether the furnisher noted that the information was disputed, and the Court acknowledged resolution of the dispute was not required. The Court noted that reporting a debt without marking it disputed may be technically correct but nonetheless materially misleading and "marking [the] delinquency as disputed in no way required [the furnishers] to resolve a question that could only be resolved by a court of law.").

[35] (*See* ECF 67 at 30-31.) Plaintiffs create the strawman argument that NMAC is arguing "verifying the dispute is too complicated and beyond their capabilities." (*Id.* at 31.) Yet no such argument was advanced - the issue is whether the FCRA can be used as a vehicle to resolve legal disputes of a debt.

[36] *Hinkle v. Midland Credit Mgm't*, 827 F.3d 1295 (11th Cir. 2016).

15