# Exhibit E

2021 WL 5239902
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Steven L. MOHNKERN and Sarah Mohnkern, Plaintiffs,

v.

EQUIFAX INFORMATION SERVICES, LLC,
Experian Information Solutions, Inc., Trans Union,
LLC, Breckenridge Group Statesboro Georgia, LLC
and National Credit Systems, Inc., Defendants.

19-CV-6446L
|
Signed 11/10/2021

**Attorneys and Law Firms**

Alexander Jerome Douglas, Kenney Shelton Liptak Nowak
LLP, Rochester, NY, for Plaintiffs.

Matthew Brady Johnson, Gordon Rees Scully Mansukhani,
LLP, New York, NY, for Defendant National Credit Systems,
Inc.

DECISION AND ORDER

DAVID G. LARIMER, United States District Judge

**INTRODUCTION**

*1 Plaintiffs Steven L. Mohnkern and Sarah Mohnkern
filed this lawsuit against Breckenridge Group Statesboro
Georgia, LLC ("Breckenridge") and National Credit Systems,
Inc. ("NCS"), alleging claims pursuant to the Fair Credit
Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*, the
Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §
1692 *et seq*, and New York state law, specifically, New
York General Business Law section 349(a) and common law
fraud. (*See generally* Dkt. # 1).[1]

Two motions are pending before the Court. First, plaintiffs
request a default judgment pursuant to Rule 55(b) of
the Federal Rules of Civil Procedure against Breckenridge
regarding their New York state law claims, which are the only
claims alleged against Breckenridge. (Dkt. # 27). Second,
NCS moves for judgment on the pleadings pursuant to Rule

12(c), seeking dismissal of plaintiffs' FCRA and FDCPA
claims, which are the only claims asserted against NCS. (Dkt.
# 38).

For the following reasons, NCS's motion is granted, which
resolves all federal claims alleged by plaintiffs in this
case. As a result, I decline to exercise supplemental
jurisdiction over plaintiffs' state law claims alleged against
Breckenridge and dismiss those claims on that basis, and thus
deny plaintiffs' motion for default judgment. Accordingly,
plaintiffs' complaint is dismissed in its entirety.

**BACKGROUND** [2]

On December 15, 2017, Sarah Mohnkern entered into a
lease agreement with Breckenridge for a college apartment in
Statesboro, Georgia, which Steven Mohnkern (Sarah's father)
co-signed (the "Lease"). (Dkt. # 1 at ¶¶ 18-19). The Lease,
which the parties have not produced as part of the record,
called for monthly payments of $584.00 for twelve months.
(*Id.* at ¶ 20). It also provided that "a tenant could terminate [it]
upon a 'Completed Reassignment,' i.e.[,] locating a tenant to
take the[ ] [original tenant's] place in the apartment building,"
a provision Breckenridge told plaintiffs they could satisfy
"simply [by] find[ing] someone to 'take over [the Lease].'
" (*Id.* at ¶¶ 21-22).

Sarah Mohnkern did not move into the apartment as planned,
and plaintiffs thus sought to get out of the Lease in
accordance with the "completed reassignment" provision. (*Id.*
at ¶¶ 23, 24, 32). When Sarah Mohnkern identified two
potential replacement tenants to assume the Lease, however,
Breckenridge "thwarted [plaintiffs'] efforts to have someone
take over [the] [L]ease" and signed each of these replacement
tenants to separate leases. (*Id.* at ¶¶ 24-31, 36). Plaintiffs
allege that Breckenridge's conduct amounted to a material
breach of the Lease under Georgia law, thereby relieving
plaintiffs' obligations under the Lease; plaintiffs therefore did
not make any Lease payments to Breckenridge. (*See generally*
Dkt. # 1).

*2 Based on this nonpayment, on September 1, 2018 –
a month following Sarah Mohnkern's original move-in date
– Breckenridge "accelerated the rent for the twelve-month
period" of the Lease, an action which plaintiffs allege also
violated Georgia law, and attempted to collect the $7,008.00
plaintiffs owed (the "Debt"). (*Id.* at ¶¶ 33, 37, 94-97). At some
point "[s]oon thereafter," Breckenridge placed plaintiffs'

Debt with NCS for collection, and NCS "began contacting plaintiffs in an attempt to collect the [D]ebt." (*Id* at ¶¶ 34-35). NCS's collection efforts included sending plaintiffs' attorney a letter on November 14, 2018 with "a copy of the [L]ease and an invoice from Breckenridge," to which plaintiffs responded by letter on December 13, 2018 explaining their view that Breckenridge breached the Lease, that plaintiffs did not owe the Debt, and "demand[ing] that NCS cease collection efforts." (*Id.* at ¶¶ 37-39). There is no allegation that NCS continued collection efforts following plaintiffs' December 2018 letter.

NCS ultimately reported the Debt as a "delinquent account" to three of the major credit reporting agencies, Equifax, Experian, and Trans Union. (*Id.* at ¶ 40). Plaintiffs disputed the accuracy of the Debt in an April 15, 2019 letter to Equifax, Experian, Trans Union, and NCS, and requested that those entities delete information relating to the Debt from plaintiffs' credit reports, again expressing their view that Breckenridge breached the Lease and pointing to legal authority showing that the Debt was "unenforceable under Georgia law." (*Id.* at ¶¶ 47-49). After receiving notice of this dispute from Equifax, Experian, and Trans Union, NCS nonetheless confirmed that the information was accurate, and the Debt continued to be reported on plaintiffs' credit reports. (*Id* at ¶¶ 16, 50-52, 151). [3] Plaintiffs allege that this inaccurate credit information has negatively impacted their credit scores, their ability to obtain a car loan, and Sarah Mohnkern's efforts to apply for an apartment. (*Id.* at ¶¶ 44-46, 158).

## DISCUSSION

### I. NCS's Motion for Judgment on the Pleadings

I turn first to NCS's motion for judgment on the pleadings because it deals with the federal claims over which this Court has original jurisdiction.

#### A. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed[,] but early enough not to delay trial." FED. R. CIV. P. 12(c). [4] The standard applicable to Rule 12(c) motions mirrors that for motions brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* 🏳 *Hayden v Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). To survive a Rule 12(c) motion, then, "the complaint must contain sufficient

factual matter to 'state a claim to relief that is plausible on its face.' " 🏳 *Graziano v Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting 🏳 *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 🏳 *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotations omitted). Moreover, while at this stage the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, *see* 🏳 *Johnson v Rowley*, 569 F.3d 40, 43 (2d Cir. 2009), at the same time, "legal conclusions, deductions or opinions couched as factual allegations [need not be accorded] a presumption of truthfulness," 🏳 *In re NYSE Specialists Sec Litig*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.) (alterations, brackets, and citation omitted), *cert denied sub nom , California Public Employees' Ret Sys v New York Stock Exch., Inc*, 552 U.S. 1291 (2008).

### B. Plaintiffs' FCRA Section 1681s-2(b) Claim

*3 Plaintiffs' FCRA claim arises under section 1681s-2(b) of the statute and challenges NCS's investigation of plaintiffs' dispute of the reported Debt, as well as NCS's refusal to request that Equifax, Experian, and Trans Union delete the Debt from plaintiffs' credit reports. (*See* Dkt. # 1 at ¶¶ 112-60). For the following reasons, this claim fails.

"The FCRA seeks to ensure 'fair and accurate credit reporting.' " 🏳 *Spokeo, Inc v Robins*, 578 U.S. 330, 334 (2016) (quoting 🏳 15 U.S.C. § 1681(a)(1)). The statute thus "regulates credit reporting procedures to ensure the confidentiality, accuracy, relevancy, and proper utilization of consumers' information," *Longman v Wachovia Bank, N.A.*, 702 F.3d 148, 150 (2d Cir. 2012) (citing 🏳 15 U.S.C. § 1681(b)), and "places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies," *Ostreicher v Chase Bank USA, N.A*, 2020 WL 6809059, *3 (S.D.N.Y. 2020) (citation omitted).

Relevant here, furnishers of information ("furnishers"), such as NCS (*see* Dkt. ## 1 at ¶ 13; 18 at ¶ 13), are "entities that

transmit, to credit reporting agencies, information relating to debts owed by consumers." *Kane v Guar Residential Lending, Inc.*, 2005 WL 1153623, *3 (E.D.N.Y. 2005), whereas consumer (or credit) reporting agencies ("CRAs"), such as Equifax, Experian, and Trans Union, (*see* Dkt. ## 1 at ¶ 12, 6 at ¶ 12; 8 at ¶ 12; 20 at ¶ 12), are entities that "regularly engage[ ] in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).

For our purposes here, section 1681s-2(b) of the FCRA "outlines a furnisher's duties following a dispute regarding the completeness or accuracy of a consumer's credit report," *Sprague v. Salisbury Bank & Trust Co.*, 969 F.3d 95, 99 (2d Cir. 2020), and among these is the obligation "to investigate and verify the accuracy of the information that they report [to CRAs] following notice of a dispute from a [CRA]," *Yuli v. Trans Union LLC*, 2020 WL 5604748, *3 (E.D.N.Y.), *report and recommendation adopted by*, 2020 WL 5594638 (E.D.N.Y. 2020). Specifically, after a furnisher receives notice from a CRA that a consumer disputes the "completeness or accuracy" of furnished information, the furnisher must (1) investigate the disputed information, (2) review all relevant information provided by the CRA, and (3) report the results of the investigation to the CRA. 15 U.S.C. §§ 1681s-2(b)(1)(A)-(C); *see also Sprague*, 969 F.3d at 99. If the furnisher's investigation reveals that furnished information is incomplete, inaccurate, or cannot be verified, it must report those results to all CRAs and take corrective measures by either modifying, deleting, or permanently blocking the reporting of the misinformation. *See* 15 U.S.C. §§ 1681s-2(b)(1)(D), (E). A furnisher's investigation of the disputed information must be reasonable. *See Yuli*, 2020 WL 5604748 at *4.

To state a claim under section 1681s-2(b) of the FCRA, therefore, a plaintiff must allege that "(1) a credit furnisher received notice of a credit dispute from a [CRA][,] and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Id.* (brackets and citation omitted). A plaintiff must also allege that the information reported by a furnisher to a CRA was inaccurate. *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 629 (6th Cir. 2018) ("a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)"); *see also Yuli*, 2020 WL 5604748 at *4 ("for

a Section 1681s-2(b) claim to succeed, a plaintiff must be able to prove that the information reported was in fact inaccurate"), *Holland v. Chase Bank USA, N.A.*, 475 F. Supp. 3d 272, 276 (S.D.N.Y. 2020) ("[a] 'prima facie showing of inaccurate reporting' is ... essential to maintaining a § 1681s-2(b) claim") (citation omitted).

*4 Credit information can be deemed to be "inaccurate" if it is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Ostreicher*, 2020 WL 6809059 at *3 (brackets and quotations omitted); *accord Pittman*, 901 F.3d at 630 (reported information is inaccurate if "a plaintiff can show that the information provided [by a furnisher to a CRA] is false or that it contains a material omission or creates a materially misleading impression"). To be sufficiently misleading, then, a plaintiff must show that the reported information is "open to an interpretation that is directly contradictory to the true information." *Wenning v. On-Site Manager, Inc.*, 2016 WL 3538379, *9 (S.D.N.Y. 2016) (citation omitted).

Plaintiffs here allege that NCS violated section 1681s-2(b) by failing to conduct a "reasonable investigation" of plaintiffs' dispute of the accuracy of the reported Debt, and by "refusing to request" that Equifax, Experian, and Trans Union (the "CRA defendants") "delet[e]" this "inaccurate information" from plaintiffs' credit reports. (Dkt. # 1 at ¶¶ 152-54; *see also* Dkt. # 44 at 9-12). In essence, plaintiffs contend that NCS's investigation was unreasonable because it failed to conclude that plaintiffs do not, in fact, owe the Debt. Plaintiffs allege that during its investigation, NCS failed to review background documents pertaining to plaintiffs' dispute of the Debt as well as "relevant [Georgia] legal authority," all of which, according to plaintiffs, show that Breckenridge breached the Lease, rendering the Debt "false" and "unenforceable under Georgia law." (Dkt. # 1 at ¶¶ 150-52). NCS, on the other hand, maintains that plaintiffs' FCRA claim fails because the Debt it reported to the CRA defendants was "factually accurate," and therefore "no reasonable investigation would have detected the alleged inaccuracy." (Dkt. # 38-1 at 8).

The threshold dispute in this case is whether NCS's reporting of the Debt as a delinquent account to the CRA defendants was accurate. Critically, plaintiffs' claim of inaccuracy – that the Debt reported by NCS is one that plaintiffs do not owe –

is based *entirely* on their view that Breckenridge materially breached the Lease under Georgia law, thereby relieving plaintiffs of their obligation to pay Breckenridge pursuant to the Lease. In other words, only if Breckenridge breached the Lease was NCS's reporting of the Debt inaccurate.

But whether Breckenridge actually breached the Lease under Georgia law is a legal question that has not been resolved in plaintiffs' favor. In fact, plaintiffs have not commenced any action in Georgia or New York seeking a declaration as to plaintiffs' liability under the Lease. Certainly, no such contract claim is presently before this Court to resolve (*see generally* Dkt. # 1), and, furthermore, the Court is under no obligation to accept as true plaintiffs' conclusory allegation that Breckenridge breached the Lease. *See ⊡In re NYSE Specialists Sec. Litig.*, 503 F.3d at 95 (courts need not accept as true "legal conclusions, deductions or opinions couched as factual allegations"). At best, then, plaintiffs allege that they do not owe the Debt – and that NCS's reporting of the Debt was therefore inaccurate for purposes of the FCRA – based solely on their unproven legal defense to payment of the Debt under Georgia law.

NCS contends that these allegations of "inaccuracy" based on legal disputes are insufficient to state a claim under section 1681s-2(b) of the FCRA. NCS cites two federal circuit court cases for the proposition that when a consumer's allegation that a reported debt is "inaccurate" turns on an unresolved legal question, a ⊡section 1681s-2(b) claim that a furnisher failed to conduct a reasonable investigation of disputed credit information cannot stand. (*See* Dkt. # 38-1 at 10-12 (citing *Hunt v. JPMorgan Chase Bank. Nat'l Ass'n*, 770 F. App'x 452 (11th Cir. 2019) and ⊡*Chiang v. Verizon New England, Inc.*, 595 F.3d 26 (1st Cir. 2010)). I agree.

**\*5** In *Chiang*, the First Circuit dismissed a plaintiff's ⊡section 1681s-2(b) claim that the furnisher defendant failed to adequately investigate plaintiff's dispute of reported credit information, holding that this type of claim required a plaintiff to show "actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover," which the plaintiff there failed to do. ⊡595 F.3d at 29-30, 41. In reaching that determination, the court relied on a case in the "related context" regarding CRAs' separate obligation to "reinvestigate" a consumer's dispute as to the accuracy of reported credit information under section 1681i of the FCRA. ⊡*Id.* at 36-37 (citing ⊡*DeAndrade v*

*Trans Union LLC*, 523 F.3d 61 (1st Cir. 2008)).[5] The court "emphasize[d] that, just as in suits against CRAs, a plaintiff's required showing [for a claim against a furnisher under ⊡section 1681s-2(b)] is *factual* inaccuracy, rather than the existence of disputed legal questions" because "[l]ike CRAs, furnishers are 'neither qualified nor obligated to resolve' matters that 'turn[ ] on questions that can only be resolved by a court of law.'" ⊡*Id* at 37-38 (emphasis in original) (citing ⊡*DeAndrade*, 523 F.3d at 68).

Relying on *Chiang*, the Eleventh Circuit in an unpublished decision also dismissed a plaintiff's ⊡section 1681s-2(b) claim, which alleged that a furnisher failed to conduct a reasonable investigation of disputes as to the accuracy of furnished information. *Hunt*, 770 F. App'x at 453. There, the plaintiff's claimed inaccuracy turned on a question of whether actions taken by the furnisher defendant relieved plaintiff of his obligation to make payments on his mortgage. *Id* at 458.

In dismissing this claim, the *Hunt* court stated that "[w]hether [plaintiff] was obligated to make payments on the mortgage after the [state court action] was filed is a currently unresolved legal, not factual, question," and that "even assuming [defendant] furnished information that turned out to be legally incorrect under some future ruling, [defendant's] purported legal error was an insufficient basis for a claim under the FCRA." *Id.*

**\*6** The Second Circuit has not addressed whether an alleged legal dispute regarding the validity or enforceability of an underlying debt renders that debt "inaccurate" for purposes of a ⊡section 1681s-2(b) claim against a furnisher. *Chiang*, however, appears to be the leading case on this issue, which the Eleventh Circuit subsequently followed in *Hunt*. In addition, numerous courts have applied *Chiang* when addressing this issue, including one in the Southern District of New York, *see Holland*, 475 F. Supp. 3d at 276 ("[h]ere, [plaintiff's] claim of 'factual inaccuracy' relies entirely on his legal contention that his debts had been discharged due to the purported running of the relevant state's statute of limitations[;] ... [s]uch a dispute is a legal, not a factual, challenge, and ... plainly insufficient to support [plaintiff's] FCRA claim [under ⊡section 1681s-2(b)]"), and elsewhere, *see, e.g., Garey v. BWW Law Grp., LLC*, 2021 WL 4521329, \*16-17 (D. Md. 2021) ("[t]he fact that [plaintiff] continues to dispute the legality of the [reported]

foreclosure is of no object – [furnisher defendant] is neither qualified nor obligated to resolve a question that can only be resolved by a court of law") (citation and quotations omitted), *Garland v. Marine Credit Union*, 2018 WL 5313769, *2, 4 (E.D. Wis. 2018) ("the dispute in this case is not over a factual inaccuracy in [d]efendants' reporting but rather a legal dispute regarding the impact the [state court amortization] proceeding had on [plaintiff's] debt overall[;] ... [a]s a result, unless and until a proper tribunal concludes the [state court amortization] proceeding eliminated the debts in their entirety or that the plan precludes the accrual of post-filing interest and other penalties, [p]laintiff cannot establish that the reported information is factually inaccurate"); *Mehta v. Wells Fargo Bank, N.A.*, 2017 WL 10573815, *3 (C.D. Cal. 2017) ("[plaintiff's] assertion – that [d]efendant's failure to perform all of its contractual obligations absolved [p]laintiff of her own duty to pay – is simply a contractual defense to the underlying debt [and] [t]he FCRA does not require [d]efendant [furnisher] to adjudicate [p]laintiff's legal contentions in the course of a credit investigation") (footnote omitted).

And while *Chiang* has not been endorsed universally, *see, e.g.*, Denan v. Trans Union LLC, 959 F.3d 290, 295 (7th Cir. 2020) (noting that because furnishers, unlike CRAs, "assume[ ] the risk and bear the loss of unpaid debt ... they are in a better position to determine the legal validity of a debt"); *Thompson v. Transunion Data Sols., LLC*, 2021 WL 1923409, *2 (N.D. Ill. 2021) ("[u]nlike [CRAs], furnishers must resolve legal questions regarding the liability when necessary to resolve disputed information"), it certainly appears to represent the prevailing view when courts deal with the type of claim asserted against furnishers like plaintiffs' here.

Curiously, plaintiffs do not cite or attempt to distinguish *Chiang* and its progeny in their opposition papers. Instead, and without any meaningful analysis, plaintiffs chalk up the "distinction between a factual inaccuracy and an account subject to a legal dispute" as a mere "distraction," contending that a "[f]raudulent debt that is subject to some vaguely defined legal dispute is still 'materially misleading' and therefore inaccurate under Second Circuit case law interpreting the FCRA." (Dkt. # 44 at 11 (citing Wenning, 2016 WL 3538379 at *9)). But *Wenning* (the only case cited by plaintiffs in support of their position that NCS's argument amounts to a "distraction") did not at all address the issue presented in this case; that case dealt with, in relevant part,

claims that the CRA defendant used a misleading term to describe information produced in a consumer report, as well as that the CRA "omitted crucial mitigating information" that could have provided clarity to the reported information. Wenning, 2016 WL 3538379 at *9-15. Plaintiffs make no such claims here, and *Wenning* is thus distinguishable.

I am persuaded by the *Chiang* line of authority cited above that plaintiffs' legal defense to payment of the Debt under Georgia contract law does not render the Debt "inaccurate" for purposes of their section 1681s-2(b) claim. While plaintiffs may very well *believe* that Breckenridge breached the Lease thereby releasing them of their payment obligations, that is an unresolved legal conclusion. Moreover, any determination that Breckenridge actually breached the Lease would require formal adjudication by a court or other tribunal (not NCS) applying Georgia contract law. Thus, because plaintiffs' inaccuracy claim is inherently "tethered to a legal dispute" with Breckenridge, it cannot form the basis of a violation under section 1681s-2(b). *See, e.g.*, Schuh v. American Express Bank, FSB, 2018 WL 3730897, *4 (S.D. Fla.) ("[p]laintiff's allegations of [defendant] reporting factually inaccurate information is only true if [p]laintiff is correct on the legality of the [state court order] extinguishing the underlying debt[;] [b]ecause [p]laintiff's allegation of a factually inaccurate debt is tethered to a legal dispute between the parties, it cannot form the basis of a Section 1681s-2(b) violation"), *report and recommendation adopted by*, 2018 WL 3730226 (S.D. Fla. 2018), *aff'd*, 806 F. App'x 973 (11th Cir. 2020).

*7 Without a threshold showing of inaccuracy, it follows, as NCS contends, that plaintiffs cannot show that NCS violated section 1681s-2(b) by failing to either conduct a reasonable investigation of the disputed Debt or request that the CRA defendants delete the Debt from plaintiffs' credit reports. *See, e.g.*, Spencer v. Specialized Loan Servicing, LLC, 2021 WL 4552548, *9 (N.D. Tex. 2021) ("§ 1681s-2(b)(1) does not mandate that the information be deleted from a consumer's credit reports on account of the dispute – particularly where the furnisher did not report inaccurate information in the first place") (brackets and quotations omitted); *Butnick v. Experian Info. Sols., Inc.*, 2021 WL 395808, *1, 5 (E.D.N.Y. 2021) (dismissing plaintiff's section 1681s-2(b) claim that defendant furnisher "failed to conduct a reasonable investigation and continued to report

**Mohnkern v. Equifax Information Services, LLC, Slip Copy (2021)**

false and inaccurate adverse information" where plaintiff failed to sufficiently allege that furnisher provided inaccurate or misleading information).

In sum, because plaintiffs have not sufficiently alleged that the Debt reported by NCS to Equifax, Experian, and Trans Union was inaccurate, their FCRA claim against NCS fails as a matter of law. Plaintiffs' FCRA claim is accordingly dismissed.

## C. Plaintiffs' FDCPA Claim
Plaintiffs' FDCPA claim relates to NCS's efforts to collect the Debt and, as with their FCRA claim, similarly hinges on their contention that they do not owe the Debt to Breckenridge under Georgia law (for the reasons detailed above). (*See* Dkt. # 1 at ¶¶ 161-98). This claim must also be dismissed.

To state a claim under the FDCPA, a plaintiff must show that "(1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Ossipova v. Pioneer Credit Recovery, Inc.*, 2019 WL 6792318, *3 (S.D.N.Y. 2019) (citation omitted). Here, only the third element is in dispute; plaintiffs allege that NCS's attempt to collect the Debt violated sections 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and 1692f(1) of the FDCPA. (Dkt. # 1 at ¶¶ 191-92).

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Among other things, this section prohibits the "false representation of the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), the "threat to take any action that cannot legally be taken or that is not intended to be taken," 15 U.S.C. § 1692e(5), and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10). Moreover, the FDCPA precludes debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f, which includes the "collection of any amount ... unless such amount is expressly authorized by the agreement creating the debt or permitted by law," *id.* at § 1692f(1). Whether a communication violates the FDCPA is evaluated under the "least sophisticated consumer"

standard, which is an "objective standard, designed to protect all consumers, the gullible as well as the shrewd." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 51 (2d Cir. 2018) (citation and quotations omitted), *cert. denied*, 139 S. Ct. 1282 (2019).

NCS contends that these claims fail because plaintiffs have not identified any misrepresentations or deceptive means used by NCS to collect the Debt; instead, according to NCS, plaintiffs merely dispute the legal validity of the underlying Debt, which alone, does not violate the FDCPA. (*See* Dkt. # 38-1 at 15-17).

*8 Indeed, plaintiffs' complaint makes clear that the sole basis for each of their claims under the FDCPA is that NCS sought to collect the allegedly invalid Debt. Plaintiffs thus characterize themselves as "non-debtors" and cite two cases for the proposition that "any attempts to collect debt from a non-debtor violate the FDCPA's prohibition on making false representation." (Dkt. # 44 at 12 (citing *Vangorden v. Second Round, Ltd P'ship*, 897 F.3d 433 (2d Cir. 2018), and *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246 (S.D.N.Y. 2011))). Yet those two cases are clearly distinguishable. In *Vangorden*, for instance, the Second Circuit held that plaintiff stated a claim under sections 1692e and 1692f of the FDCPA where plaintiff alleged that, despite receiving a debt collection letter, she had, in fact, settled the debt obligation five years earlier, and on appeal, defendant did not dispute that the collection letter at issue misrepresented plaintiff's debt obligation. *See Vangorden*, 897 F.3d at 437-38, 442. Similarly, in *Bodur*, defendant was liable under the FDCPA for sending a debt collection letter to plaintiff despite *knowing* that plaintiff was not the correct debtor. *See Bodur*, 829 F. Supp. 2d at 248, 255-56.

Here, plaintiffs' claimed status as "non-debtors" is based entirely on their conclusory belief that they do not owe the Debt under Georgia contract law, which, as explained above, is an unresolved legal dispute. Without more, these allegations, even at this stage of the case, are insufficient to state a claim under the FDCPA. *See, e.g., Gray v. Wittstadt Title & Escrow Co., LLC*, 2011 WL 6139521, *3 (E.D. Va. 2011) (dismissing plaintiff's FDCPA claims at the pleading stage because "[p]laintiff's mere conclusory statement that he believes the debt is false does not support a claim for relief[;] ... [p]laintiff's subjective belief that the referenced debt is not owed gives rise only to his right to dispute the

liability (as he did); his belief that the debt is not owed, without more, does not give rise to a FDCPA claim[;] [p]laintiff has therefore failed to establish any plausible claim of entitlement to relief under the FDCPA"), *aff'd*, 475 F. App'x 461 (4th Cir. 2012).

"[T]he FDCPA is concerned with unlawful debt collection practices, not mere disputes over the legality of the underlying debts." *Chambers v. Habitat Co.*, 68 F. App'x 711, 715 (7th Cir. 2003) (no FDCPA claim where plaintiff's complaint "ma[de] clear that the real issue is whether she [was] liable [for the debt at issue], not whether the defendants engaged in unlawful collection practices"), *cert. denied*, 540 U.S. 1119 (2004). Because plaintiffs' FDCPA claim is based on nothing more than their conclusory and self-serving allegations that they do not owe the Debt (which is an unresolved legal dispute), I do not find that plaintiffs have stated a plausible claim under the FDCPA. Accordingly, plaintiffs' FDCPA claim is dismissed against NCS.

## II. Plaintiffs' Motion for Default Judgment

I turn next to plaintiffs' motion for default judgment pursuant to Rule 55(b) against Breckenridge. (Dkt. # 27). For purposes of this motion, there is no dispute that plaintiffs served Breckenridge on July 22, 2019 and, after failing to answer or otherwise respond to the complaint, the Clerk of Court entered a default against Breckenridge on August 15, 2019 upon plaintiffs' request pursuant to Rule 55(a). (*See* Dkt. ## 17, 19, 21). At no point during this action has Breckenridge appeared, and it has not responded to plaintiffs' pending motion.

In deciding NCS's motion for judgment on the pleadings above, however, this Court has resolved all plaintiffs' federal claims alleged in this lawsuit and over which this Court has original jurisdiction. (*See* Dkt. # 1 at ¶¶ 2, 3 (alleging that this Court has jurisdiction over plaintiffs' federal claims pursuant to 15 U.S.C. § 1681p (FCRA) and 15 U.S.C. § 1692k (FDCPA), and over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367)). As a result, and pursuant to 28 U.S.C. § 1367(c)(3), I decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claims alleged under New York General Business Law section 349(a) and common law fraud, and therefore dismiss those claims. *See* 28 U.S.C. § 1367(c)(3) (where a court "has dismissed all

claims over which it had original jurisdiction," it "may decline to exercise supplemental jurisdiction" over the remaining state law claims); *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims") (quotations omitted). I recognize that this case has been pending for some time. However, discovery is not yet closed, and no trial date has been set; in fact, the fact discovery and dispositive motion deadlines contained in the Scheduling Order were stayed prior to the completion of discovery pending this Court's consideration of NCS's motion. (*See* Dkt. ## 29, 52). In my view, therefore, given the procedural posture of this case and because no federal claims remain, plaintiffs' New York state law claims should be dismissed in favor of prosecution in state court. [6]

**\*9** Accordingly, plaintiffs' motion for default judgment against Breckenridge is denied and plaintiffs' state law claims are dismissed. The Clerk of Court will also be directed to vacate the entry of default against Breckenridge. *See, e.g., Mineo v. McEachern*, 2014 WL 2197032, \*4 (D.N.J. 2014).

## CONCLUSION

For the above-stated reasons, NCS's motion for judgment on the pleadings (Dkt. # 38), is granted, and plaintiffs' complaint as alleged against NCS is dismissed. In addition, because this Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims, plaintiffs' motion for default judgment against Breckenridge (Dkt. # 27), is denied, and plaintiffs' complaint as alleged against Breckenridge is dismissed. Accordingly, plaintiffs' complaint (Dkt. # 1) is dismissed in its entirety. The Clerk is directed to vacate the entry of default entered against Breckenridge (Dkt. # 21), and to close the case.

IT IS SO ORDERED.

## All Citations

Slip Copy, 2021 WL 5239902

Mohnkern v. Equifax Information Services, LLC, Slip Copy (2021)

## Footnotes

1       Originally, plaintiffs also sued Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union"). (See Dkt. # 1). Pursuant to joint stipulations of dismissal, however, Equifax, Experian, and Trans Union have been terminated as defendants, (see Dkt. ## 48, 49, 51), leaving Breckenridge and NCS as the only remaining defendants.

2       The following facts are taken from plaintiffs' complaint.

3       None of the parties' communications regarding the Debt that are referenced in the complaint are included in the record.

4       As it relates to NCS, the pleadings in this case are closed; NCS filed its answer on July 31, 2019. (See Dkt. # 18).

5       Under section 1681i(a)(1)(A) of the FCRA, CRAs have their own obligation to "reasonably reinvestigate any disputed information contained within a consumer's credit report after receiving a direct dispute from the consumer." *Okocha v. Trans Union, LLC*, 2011 WL 2837594, *6 (E.D.N.Y. 2011), aff'd, 488 F. App'x 535 (2d Cir. 2012) (summary order). In that context, it is well settled by the Courts of Appeals to have considered the issue that CRAs need not resolve legal disputes during their reinvestigations of disputed credit information; indeed, the First, Ninth, Seventh, and Tenth Circuits have "recognized a dichotomy between factual inaccuracies that [CRAs] are statutorily obligated to reinvestigate, and 'legal inaccuracies' which are outside the competency of the [CRAs]." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567-68 (7th Cir. 2021) (explaining that the "central question" in differentiating factual inaccuracies from legal inaccuracies "is whether the alleged inaccuracy turns on *applying* law to facts or simply *examining* the facts alone," and stating that CRAs are "competent to make factual determinations, but they do not reach legal conclusions like courts and other tribunals do") (emphasis in original). See also *Denan v. Trans Union, LLC*, 959 F.3d 290, 296 (7th Cir. 2020) ("[CRAs] are neither qualified nor obligated to resolve legal issues"); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015) ("[a] reasonable reinvestigation, however, does not require CRAs to resolve legal disputes about the validity of the underlying debts they report"); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010) ("[b]ecause CRAs are ill equipped to adjudicate contract disputes, courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims"); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (whether plaintiff has a legal defense to payment of an underlying debt is "a question for a court to resolve in a suit against [the creditor] ... not a job imposed upon [CRAs] by the FCRA").

6       The fact that this case and plaintiffs' motion for default judgment have been pending since 2019 will not impact plaintiffs' ability to pursue relief against Breckenridge in state court, at least for a period of time. See 28 U.S.C. § 1367(d) ("[t]he period of limitations for any claim asserted under [ 28 U.S.C. § 1367(a)] ... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period").

---

**End of Document**                                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.